Standard Construction Company *v.* Brantley Granite Company.

[43 South., 300.]

Contracts. *Performance. Acceptance by architect. Fraud. Pleading. Evidence.*

Where a contract for building material stipulated that the granite to be furnished should be satisfactory to the supervising architect and that all not so satisfactory should be removed from the building and premises:—

(*a*) An approval of the granite by the architect is a condition precedent to a recovery for its price, unless it were refused through fraud, such gross mistake as would imply bad faith or failure to exercise an honest judgment; and.

(*b*) Evidence that the architect acted fraudulently, or made such mistake, is not admissible where not pleaded, although it be pleaded that the judgment of the architect was wrongful.

From the circuit court of Harrison county.

Hon. William H. Hardy, Judge.

The Granite Company, the appellee, a corporation, was the plaintiff in the court below, and the Construction Company, the appellant, a corporation, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court.

The appellant being under contract with the United States

Government for the erection of a stone post office and custom house building in Biloxi, entered into a subcontract in writing with the appellee, whereby, for a stipulated price, the Granite Company was to provide all material and perform all of the granite work for the building, it being stipulated that the granite should be delivered by the Granite Company to the Construction Company on the cars at the railroad depot in Biloxi, and that the granite should be satisfactory to the supervising architect of the United States Treasury Department. In good faith and in fulfilment of its part of the contract the Granite Company cut a large quantity of granite at its quarry in Georgia to conform to the proportions required, and shipped the same to Biloxi to the Construction Company. Subsequently the architect rejected the stone on the ground that it was not satisfactory for the purposes needed. The Construction Company, on being sued by the Granite Company for the price of the stone, set up as a defense the rejection of the stone by the architect, and demanded judgment against the Granite Company for a sum in excess of that claimed by it, alleging that by reason of the failure of the Granite Company to furnish proper stone, satisfactory to the architect, it had been put to much loss. There was testimony offered by the Granite Company to the effect that the stone furnished and delivered to the appellant complied fully with the requirements of the contract, and that if the stone had become damaged the same occurred after it had been received by the appellant. On the other hand it was claimed that no damage had been sustained by the stone after its reception. The supervising architect, one Dupros, testified that the sole reason why the stone had been rejected was because it did not comply with the specifications and samples in the hands of the United States Treasury Department, as stipulated in the contract between appellant and appellee. The jury returned a verdict for the Granite Company for the sum demanded in the declaration, $1,975, and the court below gave judgment accordingly.

*Harper & Harper,* for the appellant.

The contract between the appellant and the appellee stipulated that the granite to be used in the construction of the building must be satisfactory to the architect, and that all not so satisfactory must be removed. Acceptance of the granite by the architect was accordingly a condition precedent to any recovery by the appellee, yet in spite of the proof that the architect declined to accept the granite, the lower court refused the peremptory instruction asked by the defendant below, the appellant here, and permitted the case to go to the jury on several different instructions asked by the appellee, which were unsupported by the evidence.

There was no ambiguity in the contract. It gave to the architect the determination of what the plans and specifications were between the parties. And it left to the architect the determining whether the granite came up to the plans and specifications. A power was thus delegated by the appellant and appellee to the architect, and delegated, not by virtue of law nor yet by virtue of his position as a representative of the United States Government, but simply because the appellant and appellee solemnly consented to such end in writing. And under the terms of the contract the architect's decision was to be final. Accordingly the actions of the architect cannot be subject to the revisory power or authority of any court, unless it be for fraud or gross mistake. And no question of fraud or mistake was raised by the evidence. It would do violence to the language of the contract to attempt to change its specifications that the architect should determine whether the granite was satisfactory. We distinctly reiterate that the evidence—and in fact the pleadings also—failed to allege any fraud or dishonest exercise of judgment upon the part of the disinterested architect.

In *Kihlberg* v. *United States,* 97 U. S., 398, 24 Law Ed., 1106, Mr. Justice Harlan said: "The contract which is the foundation of this action provides that transportation shall be.

paid in all cases according to the distance from the place of departure to that of delivery. But no specific rule is prescribed for the ascertainment of distances. The contract is silent as to whether they shall be estimated on an air line or by the route usually traveled by contractors in conveying government stores, or by the road over which troops ordinarily marched when going from one post to another. The parties however concurred in designating a particular person, the chief quarter-master of the District of New Mexico, with power not simply to ascertain but to *fix* the distances which should govern in the settlement of the contractor's account for transportation. The written order of General Easton to the depot quarter-master at Fort Leavenworth was an exertion of that power. He discharged a duty imposed upon him by the mutual assent of the parties. The terms by which the power was conferred and the duty imposed are clear and precise, leaving no room for doubt as to the intention of the contracting parties. They seem to be susceptible of no other interpretation than that the action of the chief quarter-master, in the matter of distances, was intended to be conclusive. There is neither allegation nor proof of fraud or bad faith upon his part. The difference between his estimate of distances by air line, or by the road usually traveled, is not so material as to justify the inference that he did not exercise the authority given him with an honest purpose to carry out the real intention of the parties, as collected from their agreement. His action, therefore, cannot be subjected to the revisory power of the courts without doing violence to the plain words of the contract. Indeed, it is not at all certain that the government would have given its assent to any contract which did not confer upon one of its officers the authority in question. If the contract had not provided distinctly and in advance of any services performed under it, for the ascertainment of distances upon which transportation was to be paid, disputes might constantly have arisen between the contractor and the government, resulting in vex-

atious and expensive, and to the contractor, oftentimes ruinous litigation. Hence the provision we have been considering. Be this supposition as it may, it is sufficient that the parties expressly agreed that distances should be ascertained by the chief quarter-master, and in the absence of fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise honest judgment in the premises, his action in the premises is conclusive upon the appellant as well as upon the government. The contract being free from ambiguity, no exposition is allowable contrary to the express words of the instrument."

This principle is reiterated in *Sweeney* v. *United States,* 109 U. S., 618, 3 Sup. Ct., 344, 27 L. Ed., 1053, wherein Mr. Justice WAITE stated: "This judgment is affirmed on the authority of *Kihlberg* v. *United States,* 97 U. S., 398. It was provided in the contract that payment for the wall was not to be made until some officer of the army, civil engineer, or other agent, to be designated by the United States, had certified, after inspection, that it was in all respects as contracted for. The officer of the army, designated under this authority, expressly refused to give the necessary certificate for the alleged reason that neither the material nor the workmanship were such as the contract required. The court below found that there was neither fraud nor such gross mistake as would necessarily imply bad faith, nor any failure to exercise an honest judgment on the part of the officer in making his inspections. The appellant was not notified of the defective character of the material and that it would not be accepted, before he put it into the wall; and after he had completed his work, the wall which he constructed was taken down by order of the quarter-master general and a new one made of other material built in its place."

In *United States* v. *Gleason,* 175 U. S., 590, 20 Sup. Ct., 233, 44 L. Ed., 284, the United States Supreme Court again sanctioned the rule laid down in the *Kihlberg case, supra,* and

stated that "if a party by his contract charges himself with
an obligation possible to be performed, he must make it good,
unless his performance is rendered impossible by act of God,
the law, or the other party.   Difficulties, even if unforeseen,
and however great, will not excuse him."   And this decision
cites *Dermott* v. *Jones,* 2 Wall., 1, 17 L. Ed., 762; *Cutter* v.
*Powell,* 6 T. R., 320; 2 Smith, Leading Cases, 1; *Martinsburg*
v. *March,* 114 U. S., 549, 5 Sup. Ct., 1035, 29 L. Ed., 255;
and *Chicago, etc.,* v. *Price,* 138 U. S., 185, 11 Sup. Ct., 290,
34 L. Ed., 917.

Now, with the above authorities before us, note the undis-
puted testimony of Mr. Dupros, the architect: "Q. What is
your occupation or employment?   A. I am superintendent of
public buildings of the United States Treasury Department.
Q. How have you been engaged for the past year?   A. I have
been superintending the public building at Biloxi for the gov-
ernment.   I am there in the interest of the people to carry
out the plans and specifications according to sample furnished
the Treasury Department.   Q. Did you ever examine the gran-
ite which this suit is about, and did you accept or reject it?
A. I examined the granite, and I rejected it.   Q. Why did you
reject it?   A. Because it did not come up to the plans and
specifications and samples furnished to the United States
Treasury, and because it was not up to the contract which
existed between the United States government and the Stand-
ard Construction Company."

As this testimony was undisputed, and as the law is as above
stated, the judgment of the lower court should be reversed and
the cause remanded.

*L. H. Doty,* for appellee.

The testimony of Mr. Dupros, the architect and superintend-
ent of the building, upon which so much stress is laid by
learned counsel for appellant, is merely the testimony of a
bigot who has suddenly been placed in authority.   The testi-

mony of Mr. Dupros is wholly irrelevant to the issue between appellant and appellee. The evidence shows that there was no examination and no rejection of the granite until more than five months after its delivery in the City of Biloxi, to the Standard Construction Company. This delivery was not to the site of the building in Biloxi, but merely f. o. b., Biloxi, that is, merely delivered on the car at the freight depot at Biloxi. It had to be, and was, moved about a mile by the Standard Construction Company, and was by this company left near the building, uncrated, where workmen and others were constantly going to and fro. Hence, the granite was delivered according to the contract, plans and specifications, and this court will affirm the judgment of the lower court.

The case upon which learned counsel for appellant rely, *Kihlberg* v. *United States,* 97 U. S., 398, is not applicable to this case at all, for in the case cited there was a plain contract between Kihlberg and the United States, wherein the stipulations were clear and concise, and Kihlberg clearly breached the contract. The other case cited by opposing counsel, *Sweeney* v. *United States,* 109 U. S., 618, was one where Sweeney contracted with the United States Government, and, under the contract, submitted certain brick to the Government's architect, which brick were condemned. Sweeney afterward built the wall contracted for, out of the condemned brick, and demanded his money. The court rightly held that he could not recover.

I submit that the contention of counsel for the appellant that the contract between appellant and appellee, as regards the matter here in issue, is not subject to the revisory power of our courts, is without merit.

*Frank Johnston,* on the same side.

This was a case peculiarly appropriate for a jury, and was decided by the jury according to the decided preponderance of the evidence. Many different witnesses, among them experts, testified positively that the stone was up to the sample in grade;

that it was cut according to the specifications, and that the damage, if any, was done to the stone by chipping, and was so minute as to have been trifling.    It is undisputed from the evidence that if there was any damage to the granite it occurred after the granite reached Biloxi, and after the appellant had taken charge of the same.    On complaint from appellant the appellee sent an expert stone cutter all the way from the quarry to Biloxi to remedy any defects which, by oversight might possibly have existed in the stone when it was shipped from the quarry.    This witness testified that "there were some pencil marks on some of the stones indicating a little roughness," but he further said that the defects were trivial with the exception of some chipped corners of different pieces of granite which had evidently been lying for some time, uncrated, and in the path of workmen and other persons, and liable to damage therefrom.

Against this evidence are the statements of merely two witnesses, the representative of the appellant, and the architect, Mr. Dupros. Mr. Dupros testified, without explanation and without any particulars, that the stone furnished by the appellee to appellant for use in the building, had been inspected by him and that it did not come up to specifications and samples, hence was not according to contract.

The preponderance of the evidence was clearly with the appellee, the plaintiff in the court below.    But even if the evidence were sharply conflicting, this court would not disturb the verdict of the jury.    For the court to disturb a jury verdict, there must be a clear preponderance of evidence against the verdict.    *Brown* v. *Forbes,* 8 Smed. & M., 498; *Sims* v. *McIntyre,* 8 Smed. & M., 324.    Where the evidence is conflicting, one part sustaining the verdict, and the other against it, a new trial will not be granted unless the verdict is clearly wrong.    *Garland* v. *Stewart,* 31 Miss., 314; *Gay* v. *Lemly,* 32 Miss., 309.    When the mind cannot repose with entire confidence upon a conclusion in favor of either party, the verdict

will not be disturbed. *Walson* v. *Dickens,* 12 Smed. & M., 608; *Woods* v. *Gibbs,* 35 Miss., 559.

According to the contract, it is true the stone was to be satisfactory to the government architect, Dupros, but this did not mean that stone which was similar to the sample and cut in the requisite proportions of the contract, could be capriciously or arbitrarily rejected by the architect so as to defeat the rights of the appellee. All contracts must have a reasonable interpretation.

Argued orally by *Frank Johnston,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The contract in this case expressly provides in article four that "the contractor shall, within twenty-four hours after receiving written notice from the architect or owner, proceed to remove from the grounds or buildings all material condemned by him, whether worked or unworked, and to take down all portions of the granite which the architect shall by like written notice condemn as unsound or improper, or as in any way failing to conform to the drawings and specifications." By article six it is likewise expressly provided that "all granite must be equal to the samples which the contractor has submitted to the owner and must be satisfactory to the architect." Article nine expressly provides that "payment will be made in full within thirty days after the granite has been delivered and accepted by the architect." These are the plain and unequivocal provisions of this contract. There is no ambiguity whatever about them. The stipulation is that the granite must be satisfactory to the architect and must be accepted by the architect; and it is expressly provided that all not so satisfactory shall be removed from the grounds and building, and actually taken down, although the granite may have been put into the building. The parties were entirely competent to make such contract if they so desired. There is no conflict whatever in the testimony as to the fact that the granite was not satisfactory to the architect and

was not accepted by him, but was ordered to be removed from the grounds in accordance with the provisions which we have set out above.   There is not a single allegation in the declaration that the architect was guilty of any fraud, or of any such gross mistake as would imply fraud, or of any dishonest exercise of his judgment, and there is not one particle of proof to show any of these things.   On this state of case the court should have given a peremptory·instruction for the defendant.

The principle has been over and over settled by the supreme court of the United States, some of the best authorities being very carefully collected in the very able brief of the learned counsel for appellant.   The principle was laid down by Judge HARLAN in *Kihlberg* v. *United States,* 97 U. S., 398, 24 L. Ed., 1106, as being this:   That in such case, wherever the parties by their contract have expressly delegated to a tribunal' or persons the determination of the question whether the material is of the required quality, the determination of such persons is final, "in the absence of fraud or such gross mistake as would necessarily imply bad faith or a failure to exercise an honest judgment in the premises."   This principle is reiterated in *Sweeney* v. *United States,* 109 U. S. 618, 3 Sup. Ct., 344, 27 L. Ed., 1053, in which case it is further stated that the decision of such person or tribunal is not subject to the revisory powers of the courts, in the absence of fraud as stated above.   In the case of *United States* v. *Gleason,* 175 U. S., 590, 20 Sup. Ct., 233, 44 L. Ed., 284, the court said:   "While we are to determine the legal import of this provision according to its own terms, it may be well to briefly recall well-settled rules in this branch of the law.   One is that if a party by his contract charges himself with an obligation possible to be performed, he must make it good, unless his performance is rendered impossible by the act of God, the law or the other party.   Difficulties, even if unforeseen, and however great, will not excuse him.   If parties have made no provision for dispensation, the rule of law gives none; nor in such circum-

stances can equity interpose. *Dermott* v. *Jones,* 2 Wall. (U. S.), 1, 17 L. Ed., 762; *Cutter* v. *Powell,* 6 T. R., 320; 2 Smith, Leading Cases, 1. Another rule is that it is· competent for parties to a contract of the nature of the present one to make it a term of the contract that the decision of an engineer or other officer that all or specified matters of dispute that may arise during the execution of the work shall be final and conclusive, and that, in the absence of fraud or mistake so gross as to necessarily imply fraud, such decision will not be subject to the revisory power of the courts. *Martinsburg* v. *March,* 114 U. S., 549, 5 Sup. Ct., 1035, 29 L. Ed., 255; *Chicago, etc.,* v. *Price,* 138 U. S., 185, 11 Sup. Ct., 290, 34 L. Ed., 917. The fallacy, we think, of the court below, was in assuming that it was competent to go back of the judgment of the engineer and to revise his actions by the court. This, we have seen, could only be done upon allegations and proof of bad faith, or of mistake so gross as to justify an inference of bad faith; but in this case we find neither allegation nor proof. The plaintiffs allege that they were prevented from completing their work by ·force and violence, and not through any fault of their own, and that the judgment of the engineer in refusing an extension was, therefore, wrongful and unjust. But, as they agreed in the contract, as we have construed it, that the engineer was to decide whether the failure to complete was due to the force of the elements or to their fault, their allegation now is that the determination of the engineer was wrongful and unjust, because he decided the submitted issue against them. Of course, such an allegation is wholly insufficient on which to base an attempt to upset the judgment of the engineer. Without protracting the discussion, our conclusion is that no allegation or finding is shown in this record sufficient to justify the court in setting aside the judgment of the engineer .as having been rendered in bad faith or in any dishonest disregard of the rights of the contracting party."

*It follows, from these views, that the judgment of the court below is reversed, and the cause remanded.*