**ARD DR. PEPPER BOTTLING CO. v. DR. PEPPER CO. et al.**

No. 14276.

United States Court of Appeals Fifth Circuit.

Feb. 27, 1953.

M. B. Montgomery, Jackson, Miss., Hugh v. Wall, Brookhaven, Miss., Barnett, Jones & Montgomery, Jackson, Miss., for appellant.

C. B. Snow, Jackson, Miss., Snowden M. Leftwich, Dallas, Tex., Butler, Snow & O'Mara, Jackson, Miss., for appellees.

Before HUTCHESON, Chief Judge, and STRUM and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment rendered upon a directed verdict in favor of the defendant, appellee. For convenience, the appellant, plaintiff, will be hereafter referred to as Ard and the appellee, defendant, as Dr. Pepper.

The complaint seeks the recovery of damages in the amount of $150,000.00 for the alleged wrongful, willful, and malicious breach of a bottler's license agreement entered into between Ard and Dr. Pepper in 1938. The answer admits the cancellation by Dr. Pepper of the license agreement on July 27, 1950, and alleges that Dr. Pepper in good faith determined that Ard had not complied with the terms and provisions of the license agreement, and that under the provisions of the agreement Dr. Pepper's determination as to these matters authorized it to cancel the agreement and was final and conclusive.

The district court in the course of its instructions to the jury directing a verdict for the defendant, Dr. Pepper, stated that the cases of Goltra v. Weeks, 271 U.S. 536, 46 S.Ct. 613, 70 L.Ed. 1074; Standard Construction Co. v. Brantley Granite Co., 90 Miss. 16, 43 So. 300; Shepherd v. Union Central Life Ins. Co., 5 Cir., 74 F.2d 180; and Lanier v. New York Life Ins. Co., 5 Cir., 88 F.2d 196, were controlling and made it imperative that the directed verdict be given. The view of the district court is fairly summarized in the concluding paragraph of its charge to the jury:

"The Dr. Pepper Company, when it lets these contracts out, naturally is looking to the future. It puts at least a fair part of its business in the hands of its dealers and it, therefore, has the right to reserve unto itself the determination of whether or not the contract is being carried out to its satisfaction. The company, in good faith, and I think after a full and thorough investigation, and after an ample opportunity to Ard Dr. Pepper Bottling Company to take up the matter with it, determined that the contract was not being carried out to its satisfaction and, therefore, it had the right to cancel the contract. That being the law, it is the duty of the court to instruct the jury to return a verdict to find for the defendant"

By the bottler's license agreement entered into between Dr. Pepper and Ard on the 20th day of July, 1938, Dr. Pepper granted to Ard the exclusive license to bottle in a designated territory consisting of a number of counties in Mississippi a soft drink known as "Dr. Pepper", provided for the price and terms at which Dr. Pepper was to sell syrup to Ard, and agreed that "such exclusive license shall continue so long as Dr. Pepper Company, or its successors or assigns, continue the manufacture of Dr.

Pepper syrup, unless sooner terminated under the provisions hereinafter set out." ·

Among Ard's agreements were the following (emphasis supplied):

"(a) To accept Dr. Pepper as its leading drink * * *.

"(b) To use modern, automatic and sanitary equipment throughout, of such character in all bottling operations *as are, or may be, required and approved by the Grantor.*

\* \* \* \* \* \*

"(e) To at all times loyally and faithfully promote the sale of and secure thorough distribution of Dr. Pepper throughout every part of said territory and to all dealers therein, and to develop an increase in volume of sales of Dr. Pepper satisfactory to the Grantor. And in this connection, the Grantee agrees, represents and guarantees that the said territory included in this license, and every part thereof, and all dealers therein, can, and will be fully covered, solicited and worked by the Grantee in a systematic and business-like manner now, and at all times hereafter while this license agreement remains in effect. *The determination and judgment of Dr. Pepper Company as to whether or not this clause is being complied with when made in good faith, shall be sole, exclusive and final, and such determination by the Dr. Pepper Company that this clause is not being complied with shall in addition to any other grounds herein mentioned, be grounds for forfeiture of this license at the option of Grantor.*

"(f) To allow representative of the Grantor to enter the premises of the Grantee at *any reasonable time* and make examinations to see that the bottling is being properly done, under sanitary and other conditions herein set forth.

\* \* \* \* \* \*

"(k) To maintain a bottling plant at Brookhaven, in the County of Lincoln, in the State of Mississippi, during the duration of this license. * * * *

Grantee shall *add to the equipment and facilities of each such plant as often and in such amount as shall be necessary and required of Grantee by Dr. Pepper Company acting in good faith.*

"(1) * * * Grantee shall continue during the life of this license to expend annually, at least an amount equal to fifteen (15¢) cents per gallon for each gallon of syrup purchased and used by the Grantee in the above territory during the previous year,·for advertising Dr. Pepper, * * *."

Stated to be "For The Further Mutual Protection And Benefit of the parties" it was agreed in part as follows (emphasis supplied):

"1. That both the Grantor and Grantee shall be released from any obligations herein undertaken in the event and to the extent that *same shall become reasonably impossible of fulfillment because of war conditions, strikes, fires, storms, breakdowns in machinery, or any other conditions reasonably beyond the control of either party.*

"2. That neither this license agreement, nor any interest therein, shall be sold, transferred, assigned, etc.

\* \* \* \* \* \*

"5. That in case of the violation of any one or more of the terms or provisions of this license agreement by the Grantee or in the event Grantee fails, *within the judgment of the Grantor,* to faithfully comply ·with provisions as above set out, then Grantor shall be entitled to cancel or terminate this license upon giving written notice mailed to Grantee by registered mail and addressed to his last known place of business, and upon notice being given of such cancellation as herein provided, this license agreement and all rights hereunder shall be terminated and at an end, provided, however, that in the event of the termination of this license agreement as herein provided, or in any other manner, such termination shall not release the Grantee from the payment of any amount which may

then be owing to Grantor. And upon any termination of this license agreement Grantee shall discontinue the use of the name of 'Dr. Pepper' and the bottling of said product. *The judgment and determination of Dr. Pepper Company when made in good faith, as to the failure of Grantee to comply with any of the terms of this license, shall be, and is hereby, made conclusive and final.* The failure of Dr. Pepper Company to exercise its option to forfeit this license on account of any one, or more, breaches of any of the covenants and obligations to be performed by Grantee shall never operate to or be construed as a waiver of or an estoppel to assert the right to forfeit or terminate this license for any contemporaneous or subsequent breaches or violation of any of the covenants or agreements on the part of Grantee. The Grantee agrees, in the event of the termination of this license agreement as herein provided, or any other termination thereof, that Grantee shall at the request of Grantor turn over and deliver to the Grantor, or to such person as may be designated by the Grantor, all unused Dr. Pepper advertising matter in the possession of the Grantee sold to Grantee by Grantor and Grantor will pay the price it received therefor, and Grantee upon any termination of this license further obligates himself to resell to Dr. Pepper Company at the same price it was sold to him, any Dr. Pepper syrup then in good and merchantable condition, that he has on hand at the time of such termination, and Dr. Pepper Company agrees to repurchase the same.

"6. It is further understood and agreed that Grantee may, upon giving ninety (90) days' written notice by registered mail, addressed to the office of Grantor, at Dallas, Texas, cancel this license at any time."

The agreement was supplemented by an instrument dated April 29, 1940, in matters not here material.

The letter of cancellation dated July 27, 1950, fairly sets out the grounds upon which Dr. Pepper claimed the right to cancel and terminate the license agreement:

"You have failed to carry out and perform the terms, provisions and obligations imposed upon you by Dr. Pepper Bottler's License Agreement No. 329-A issued to you on July 20, 1938.

"Your bottled Dr. Pepper has not been up to our required standard. Your bottling machinery and equipment are inadequate and insufficient and you have failed to use modern, automatic and sanitary equipment in your Dr. Pepper bottling operations, as you have been requested to do. The building in which you operate is wholly inadequate and improperly maintained for a modern, sanitary bottling plant.

"You have failed to fully cover, solicit and work in a systematic and business-like manner for the promotion of Dr. Pepper the territory covered by your license agreement and all dealers therein. You have failed to at all times loyally and faithfully promote the sale of and secure thorough distribution of Dr. Pepper throughout every part of your territory and to all dealers therein, and you have failed to develop an increase in the volume of sales of Dr. Pepper satisfactory to the Dr. Pepper Company. You have failed to properly advertise Dr. Pepper in your territory.

"You have failed within the judgment of Dr. Pepper Company to faithfully comply with the provisions of your license agreement and the Dr. Pepper Company hereby exercises its right to terminate the aforesaid Dr. Pepper Bottler's License Agreement."

Ard's "specification of errors" is as follows:

"1. The court erred in excluding testimony offered by the plaintiff in regard to the tolling of sugar formerly used in making sodas to establish the increase in sales was a war increase and that resultant decline in 1948, 1949 and 1950 was a decline due to artificial 'war conditions' and plaintiff was entitled to be relieved from responsibility

for said decline by the express terms of the license agreement. * * *

"2. The Court erred in granting the directed verdict for defendant under the proof in this case for the reason that the defendant could not cancel the Bottler's License Agreement, and its conduct in so doing was unreasonable, arbitrary, willful and without just cause.

"3. The Court erred in granting a directed verdict for the defendant because the fact of whether or not the defendant exercised good faith in cancelling the license agreement was a question of fact to be determined by the jury, and the Court erred in peremptorily directing a verdict for the defendant under the testimony in this case; and

"4. The Court erred in directing a verdict for the defendant because such a verdict is against the preponderance of the evidence in this case."

■ As to the first specification of error, we find it unnecessary to state in detail the reasons that lead us to the opinion that the district court exercised a reasonable discretion in ᐧexcluding this evidence on the ground that it was cumulative, repetitious and remote. If admitted, it could have gone only in explanation of the decline in sales in 1948, 1949 and 1950,[1] and the cancellation was not based solely upon a failure to increase the volume of sales, but also upon the many other claimed breaches of the contract set out in the letter of cancellation.

There was substantial evidence of other breaches of the license agreement on the part of Ard. He admitted that he failed to expend for advertising in 1949 and 1950 the amounts required by the license agreement and sought to excuse that failure by "war conditions" and "breakdowns in machinery", in that at the close of the war, it had been necessary for him to make such substantial expenditures for the repair and replacement of trucks and machinery, not possible during the war, as to make the duty of advertising "impossible of fulfillment." Laboratory tests on water used by Ard in bottling Dr. Pepper had on a number of occasions showed the presence of yeast and other bacteria injurious to the production, which would have been removed by a machine for treating the water that could have been purchased for as little as $250.00. Ard refused to install such a machine. Dr. Pepper claimed that the building used by Ard was inadequate and improperly maintained and photographic exhibits are certified to the court in support of that contention. It was further claimed, and there was much evidence pro and con, that Ard had not faithfully promoted the sale of Dr. Pepper throughout the territory.

■ The gist of Ard's contentions in support of the second, third and fourth specifications of error is that the evidence presented a question for the jury as to the right of Dr. Pepper to cancel and terminate the license agreement. In final analysis, the decision of the case depends upon the construction of those terms of the contract giving Dr. Pepper the right or option to terminate or cancel the license. The district court was of the opinion that, so long as Dr. Pepper's dissatisfaction was genuine and it acted in good faith, under the terms of the license agreement, Dr. Pepper's judgment was conclusive and, further, that there was no evidence of bad faith on the part of Dr. Pepper. We agree.

■ Ard, having alleged that the contract was wrongfully terminated, had the burden of so proving. Inman Manufacturing Co. v. American Cereal Co., 133 Iowa 71, 110 N.W. 287, 291, 8 L.R.A.,N.S., 1140; Harlev v. Sanitary District of Chicago, 226 Ill. 213, 80 N.E. 771; 3 Corbin on Contracts, page 572, Sec. 645, Note 76; 17 C.J.S., Contracts, § 589, Note 18.

■ It is, of course, elementary that competent persons ordinarily have the utmost liberty of contracting, and may enter

---

1. There had been, in fact, a marked decline in sales as indicated by Ard's purchase and use of syrup from Dr. Pepper, for 1947, 11,800 gallons, for 1948, 6,875 gallons, for 1949, 5,225 gallons, for the first 7 months of 1950, a continued decline.

into any agreement that they please so long as it is not illegal or violative of public policy. 12 Am.Jur., Contracts, § 149. A provision making the contract terminable at will would not have been illegal. 17 C.J.S., Contracts, § 399.[2] Indeed, Ard had the right to cancel the license, with or without cause, upon giving 90 days written notice to Dr. Pepper.

The present contract expressly provides that the determination of Dr. Pepper as to the failure of Ard to comply with any of the terms of the license agreement must be made in good faith. As said in Goltra v. Weeks, 271 U.S. 536, 548, 46 S.Ct. 613, 617, 70 L.Ed. 1074:

> "The cases leave no doubt that such a provision for termination of a contract is valid, unless there is an absence of good faith in the exercise of the judgment. Here nothing of the kind is shown. Such a stipulation may be a harsh one, or an unwise one, but it is valid and binding if entered into."

██ So much has been written on the subject of contracts where performance by one party is conditioned on the satisfaction of the other party that there would be no point in our undertaking a restatement of the law on the subject. See Shepherd v. Union Central Life Ins. Co., 5 Cir., 74 F.2d 180; 3 Corbin on Contracts, Secs. 644, et seq.; 3 Williston on Contracts (Revised Edition), Sec. 675 A; 12 Am.Jur., Contracts, Secs. 434 and 340, et seq.; A. L.I. Restatement, Contracts, Secs. 265 and 301; 2 Restatement, Agency—, Sec. 445, Comment b; W. C. Shepherd Co. v. Royal Indemnity Co., 5 Cir., 192 F.2d 710; Coleman v. Graybar Electric Co., 5 Cir., 195

F.2d 374. Courts are cautious in enforcing such contracts literally when to do so would result in injustice. Dependent upon the subject matter of the contract and all of the circumstances surrounding the parties and particularly when a definite objective test of satisfaction is available, courts tend to adopt an interpretation of the contract, wherever possible, requiring performance to the satisfaction of a reasonable man. After all is said and done, however, the question is one of construction or interpretation, and the contract, if not illegal or against public policy, must be enforced according to the actual or legally presumed intention of the parties.

██ The terms of the present contract in the light of its subject matter and of the circumstances of the parties leave little or no room for construction or interpretation. The impact upon Dr. Pepper's business of improper performance of a license agreement by a bottler could well be serious. Dr. Pepper was the party to be satisfied, not some imaginary reasonable person. It was not unreasonable for Dr. Pepper to reserve to its own business judgment the question of whether the agreement had been properly and faithfully performed. There was no evidence of actual ill will, nor of financial advantage to Dr. Pepper. The cancellation of the license agreement left Dr. Pepper without a distributor in the territory, and the place had not been filled. If Ard would make out his case by proof of performance, such proof must extend to such perfect performance as would negative Dr. Pepper's good faith. The proof in this case fails by a wide margin to meet that exacting standard. On the contrary, we, like the district court, are impressed

---

**2.** It should be noted, however, that an express provision making the contract terminable at will by Dr. Pepper would have presented the question of whether the agreement was not illusory in character because conditioned upon the whim or caprice of Dr. Pepper and, therefore, unenforceable so far as it was executory. See Miami Coca-Cola Bottling Co. v. Orange Crush Co., 5 Cir., 296 F. 693; 4 Williston on Contracts (Revised Edition), Sec. 1027 A; 3 id., Sec. 675 A. The insertion of the element of good faith keeps the contract from being illusory. As expressed in Comment a. to Restatement, Contracts. Sec. 265.

"A promise conditional upon the promisor's satisfaction is not illusory since it means more than that validity of the performance is to depend on the arbitrary choice of the promisor. His expression of dissatisfaction is not conclusive. That may show only that he has become dissatisfied with the contract; he must be dissatisfied with the performance, as a performance of the contract, and his dissatisfaction must be genuine." (See, also, authorities just hereinbefore cited.)

that Dr. Pepper acted in the utmost good faith and indeed with patience and forbearance. The evidence did not authorize submission to the jury of the issue of Dr. Pepper's good faith and the judgment is therefore

Affirmed.