198 So.2d 592 (1967)
DELTA CONSTRUCTION COMPANY OF JACKSON, Mississippi
v.
CITY OF JACKSON, Mississippi, Jackson Municipal Airport Authority, E.B. Cavallo and Associates, and Michael Baker, Jr., Inc.
No. 44227.
Supreme Court of Mississippi.
January 30, 1967.
Suggestion of Error Overruled in Part and Sustained in Part May 15, 1967.
*594 Cox, Dunn & Clark, Jackson, for appellant.
Brunini, Everett, Grantham & Quin, Crisler, Crisler & Bowling, E.W. Stennett, Robert E. Perry, Jackson, for appellees.
RODGERS, Justice:
The Delta Construction Company of Jackson, Mississippi, hereinafter called "Contractor," filed a suit against the City of Jackson, Mississippi, Jackson Municipal Airport Authority, E.B. Cavallo and Associates *595 and Michael Baker, Jr., Incorporated. For brevity, the City of Jackson and the Jackson Municipal Airport will be referred to as "Owners," E.B. Cavallo and Associates and Michael Baker, Jr., Incorporated, will be referred to as "Engineers."
The suit was originally filed in the Chancery Court of the First Judicial District of Hinds County, Mississippi, in which the First National Bank of Jackson, Mississippi, and the Deposit Guaranty Bank & Trust Company of Jackson, Mississippi, were made parties by attachment. The chancery court entered an order transferring the suit to the circuit court. After the Contractor had filed its declaration in the circuit court, the Owners and Engineers filed separate demurrers to the declaration. The circuit court sustained the demurrers, and the Contractor amended its declaration. The former demurrers were again considered in the light of the amended declaration, and the court again sustained the demurrers and dismissed the cause of action. The Contractor appealed to this Court.
It now becomes necessary to detail the admitted facts and contentions of the parties. The declaration alleged that the Contractor-appellant entered into a contract with the Owners for the construction of a certain part of the Jackson Municipal Airport. A copy of the contract was filed with the declaration as Exhibit A. It was alleged that the work of the Contractor was finally accepted and approved "as having been satisfactorily completed on August 25, 1961." The Contractor charges, however, that the Owners failed to pay to the Contractor the sum of $191,425.60 for 26+% additional unclassified excavation and certain other claims rejected by the Engineers. The claims are detailed as follows:
1. Owners paid the Contractor $1,553.02 less than was admitted to be due it on December 14, 1961.
2. After being released on January 20, 1961, from further maintenance responsibility, the Contractor was required to repair erosion damage to a certain area, at a cost to the Contractor of $4,095.77, for which the Contractor was entitled to be paid as "extra work."
3. Contractor was wrongfully required to install 225 lineal feet of intercepter ditches at a cost of $16,336.46. This was extra work required of the Contractor.
4. Contractor was required to pay $5,457.33 for grubbing within the construction limits, not set out in the contract.
5. Contractor was required to move 40,571 cubic yards of dirt under bid item No. B-152 more than called for by the contract bid.
6. Contractor claims that because of the over-run of unclassified excavation under its bid item No. B-152, the excavation exceeded 25% of its bid, and the Contractor is entitled to "a fair and reasonable price and profit for the extra work" in the sum of $191,425.60.
7. Contractor claims legal interest from due date on all items.
The Contractor attached as exhibits to the declaration: (A) A copy of the contract between the parties; and (B) a copy of the letter dated October 20, 1961, outlining the various claims of the Contractor with itemized cost for each claim, and previous letters written before the extra work was performed asserting claims for damages.
The main contention of the Contractor is directed toward the recovery of cost for the alleged over-run of unclassified excavation, bid item B-152 of the contract. It is charged that the Contractor bid twenty-four cents per cubic yard for material to be moved, based upon a representation made by the Engineers on their drawing and plans submitted for the Owners, acting through the Engineers, showing this figure to be 2,316,060 cubic yards at twenty-four cents per cubic yard, or the sum of $555,854.40. It is said that this calculation was shown to *596 be a studied Engineers' calculation based upon facts known to them, but that said calculation of yardage on which the Contractor's bid was based was grossly and negligently misrepresented to the extent that such item of unclassified excavation in fact turned out to be 2,935,000 cubic yards, which was an increase of more than twenty-five per cent and involved the extra cost to the Contractor amounting to $191,425.60.
The Owners, the City of Jackson and the Jackson Municipal Airport Authority, demurred to the declaration upon the grounds that: (1) The declaration states no cause of action against them; (2) there is a misjoinder of actions because the declaration sounds in tort against the Engineers and a breach of contract against the Owners; (3) there is no common charge of negligence or breach of contract against all of the defendants; (4) the suit seeks to hold the Owners liable for negligence of the Engineers, but the Owners are immune to such suits under Mississippi Code Annotated section 7545-16 (Supp. 1964); (5) the suit is based on a cost-plus claim for extra work, rather than the applicable contract unit price when no supplemental agreement was first executed by the parties; (6) the contract provided that the Engineers would decide all of the disputed questions of fact and the Engineers so acted on all of the claims, and, hence, their action is final; (7) since all claims were denied by the City Council of the City of Jackson, the Contractor's only remedy was to appeal to the circuit court and the Contractor cannot now, under the provisions of Mississippi Code Annotated section 1195 (Supp. 1964), bring suit; and (8) the Contractor is bound by the contract sued on, and moreover the City and the Jackson Municipal Airport Authority are not liable therefor under the law.
The defendants, E.V. Cavallo and Associates and Michael Baker, Jr., Incorporated, filed a demurrer to the declaration and asserted that the Contractor was not entitled to recover against them because of the first five grounds asserted by the Owners, and, in addition, (6) no separate relief is requested by the declaration as to the two classes of defendants; (7) the contract expressly prohibits an action against the Engineers for negligence on estimates and calculations as to the excavations; and (8) the entire suit is contrary to the written agreement, and the Contractor is estopped to assert the inconsistent claims.
The appellants have appealed from the judgment of the trial court dismissing the suit for failure of the Contractor to plead after the demurrers were sustained.
The Contractor-appellant contends on appeal that the claims filed with the Engineers were within the terms of the contract and that the trial court erred in sustaining the demurrers based on the argument of appellees to the effect that: (1) The Contractor failed to obtain a "supplemental agreement covering additional work" for which claim was made, and all of the claims are contrary to the express terms of the contract; (2) the adverse decisions of the Engineers on the various claims were final and conclusive; and (3) the claims were also rejected by the City Council and the only remedy open to the Contractor was an appeal to the circuit court under section 1195, supra. The pertinent parts of the contract between the parties are hereto attached under Note 1,[1] and will be referred to by item numbers shown in the contract.
The Contractor-appellant argues that the decisions of the Engineers were not final and conclusive under the contract between the Contractor and the Owners. It is pointed out that the Contractor wrote the Engineers a letter, a copy of which is attached to the declaration, in which it complained that the Contractor was being required to excavate more material than was specified in the Engineers' drawing, on which appellant's bid was based. The Contractor also pointed out that the Engineers requested ("ordered") the Contractor to *597 complete the grading work as designated by them so as to enable them to take a cross-section measurement. The Contractor-appellant alleged that the material shown to have been excavated far exceeds the volume of material they bid to excavate. The Contractor-appellant contended that, although the contract required that where it became necessary to make changes in excess of twenty-five per cent on any major item, "the same shall be covered by supplemental agreement," nevertheless Sub-paragraphs c, d, and f of GC-10 of the contract provided for extra work upon the written order of the Engineers, and the letter from the Engineers which required the Contractor to proceed meets this requirement of the contract. Moreover, it is said, the Contractor gave notice of its intention to make claim before the work was performed, as required by Sub-paragraph f.
The claim against the Owners is based upon the allegation that the Engineers grossly and negligently understated the amount of grading required and that the Contractor had a right to rely upon their "studied calculation" for the purpose of making its bid on the project. It is alleged that the Contractor did rely upon the Engineers' calculation in making its bid of twenty-four cents per cubic yard of material to be excavated on the project. It is therefore contended that the Engineers are liable for the damages accruing to the Contractor because of their gross misrepresentation in the preparation of the plans prepared by them for the use of bidders. Finally, it is contended that although the Contractor required a supplemental contract for extra work under certain conditions, nevertheless  under the facts here pleaded, where the Contractor was required to do extra work by the Engineers with full knowledge of the Owners  the Owners by their action and acquiescence waived any contractual provisions for the supplemental agreement in the case of an overrun of more than twenty-five per cent on any major item.

I
After careful examination of the pleadings and authorities cited, we have reached the conclusion that the trial court was correct in sustaining the demurrers filed by defendants Michael Baker, Jr., Incorporated, and E.B. Cavallo and Associates, upon the ground that the declaration stated no cause of action against either of them. The Engineers were not parties to the contract between the Owners and the Contractor and are not liable under the contract. Burns v. Washington Savings, 251 Miss. 789, 171 So.2d 322 (1965); Jones v. Miss. Farms Co., 116 Miss. 295, 76 So. 880 (1917); 17 Am.Jur.2d, Contracts, § 297 (1964); 17A C.J.S. Contracts § 519 (1963). The opinions in some of the famous old cases are very interesting on this point. It has been said that "Whenever a wrong or injury results from the breach of a contract merely, an action or redress, whether in form ex contractu or ex delicto, can be maintained only by a party to the contract." Davidson v. Nichols, 11 Allen 514, 517 (Mass. 1866). This has been the rule in the United States for many years, and the reason for the rule is that privity of contract is necessary to an action founded on a breach of contract, because otherwise a man's responsibility for not carrying out his agreement with another would have no limit; there would be no bounds to actions if the ill-effect of the failure of a party to a contract to perform his agreement could be followed down the chain of results to the final effect. Cranford v. Western Union Telegraph Co., 138 N.C. 162, 50 S.E. 585 (1905).
We are also of the opinion that the demurrers were properly sustained because the suit in tort for the alleged negligence of the Engineers is charged to have arisen under the terms of a contract under which there was no privity of contract between the Engineers and the Contractor. It was pointed out many years ago in Thomas v. Winchester, 6 N.Y. 397 (1852), that if a *598 blacksmith negligently shoes another's horse, and a third person hires the horse from the owner and is injured while riding it by reason of the defective shoeing, he cannot sue the blacksmith. See also: Higgins Lbr. Co. v. Rosamond, 217 Miss. 1, 63 So.2d 408 (1953); Kilcrease v. Galtney Motor Co., 149 Miss. 703, 115 So. 193 (1928); Mullican v. Meridian Light & Ry. Co., 121 Miss. 806, 83 So. 816, 9 A.L.R. 165 (1920); City of Vicksburg v. Holmes, 106 Miss. 234, 63 So. 454, 51 L.R.A.,N.S., 469 (1913); Wilkinson v. Light, Heat & Water Co. of Jackson, 78 Miss. 389, 28 So. 877 (1900); 38 Am.Jur., Negligence, § 21 (1941).
Moreover, the action against the Owners for an alleged breach of contract and the charge of negligence against the Engineers is a misjoinder of causes of action, since the suit against the Owners is based upon contract and the suit against the Engineers is based upon tort, and the defendants are not liable jointly on either charge. Actions ex contractu and ex delicto cannot be maintained in one cause of action in the absence of a statute permitting the joinder of these causes in one suit. Nasif v. Booth, 221 Miss. 126, 72 So.2d 440 (1954); Potomac Ins. Co. v. Wilkinson, 213 Miss. 520, 57 So.2d 158, 43 A.L.R.2d 321 (1952); Owens v. Gulf & S.I.R.R. Co., 118 Miss. 437, 79 So. 348 (1918). Cf. Newton Oil & Mfg. Co. v. Sessums, 102 Miss. 181, 59 So. 9 (1912).

II
Upon an examination of the pleading in this suit we are confronted at the threshold with the argument that the plaintiff could not maintain a suit in the circuit court for the reason that the Owners could not pay the claims filed by the Contractor, since it was agreed in the contract that the Engineers would be the arbitrators of any disputes arising under the contract. (See Paragraph GC-27, Note 1.) The appellees, Owners, argued that the decision of the Engineers was final. They cited authorities listed under Annot., 54 A.L.R. 1255 (1928) and Annot., 110 A.L.R. 137 (1937), and they argued at length the case of Standard Construction Company v. Brantley Granite Company, 90 Miss. 16, 43 So. 300 (1907). In Standard Construction Company the contract provided that "all granite must be equal to the samples which the contractor has submitted to the owner and must be satisfactory to the architect." 90 Miss. at 24, 43 So. at 300. The Court held in that case that since the granite was not satisfactory to the architect, his decision was final in the absence of fraud.
The problem we have with this argument is that the contract now before the Court does not provide that the "decision" of the Engineers shall be "final." On the contrary, the contract provided that the decision of the Engineers would not be final, but that disputes would be decided by the Engineers subject to written appeal to the City by the Contractor. (See Paragraph GC-27, Note 1.)
The Owners asserted that the Contractor's exclusive remedy against them for the claims here was to appeal to the circuit court from the decision of the City Council by authority of Mississippi Code Annotated section 1195 (1956). This section is authority for appeals from boards of supervisors and municipalities involving decisions on governmental functions, legislative, administrative or judicial. We are of the opinion that a suit may be maintained against a municipality, and the Owners in this case, for alleged breach of contract. The appeal mentioned in the contract is not the exclusive remedy of the Contractor. Pylant v. Town of Purvis, 87 Miss. 433, 40 So. 7 (1906); Miss. Code Ann. § 3374-02 (1956).

III
We have reached the conclusion that the Contractor is not entitled to recover the sum of $191,425.60 from the Owners for excavation and removal of material, representing the difference between removal of 2,316,060 cubic yards in the contract and *599 2,935,000 cubic yards actually removed, for reasons hereinafter shown.
Paragraph 2(b) of the Instructions to Bidders (See Note 1) expressly states: "The City does not expressly or by implication agree that the actual quantities involved will correspond exactly therewith; nor shall the bidder plead misunderstanding or deception because of such estimate of quantities * * * pertaining to the work." Moreover, Paragraph 2(c) provides that the bidder must make an examination of the site of the proposed work and shall satisfy himself as to the quantities of work to be performed. It is therefore apparent to us that the Contractor cannot now claim that he thought the estimates set out in the contract were correct and that he had a right to rely upon them.
It is true that the contract provided that the Engineers were authorized to make certain changes of a minor nature in the operation from time to time, provided the changes did not affect the cost of the project to more than twenty-five per cent of the total cost of any major item. (See Paragraph GC-10, Note 1.) The cost of such change in the extra work was required to be done at the unit price named in the contract or subsequently agreed upon. There is nothing in the contract which gives the Engineers the authority to require work to be done over and above the twenty-five per cent margin on minor changes. The Engineers had no authority to change the contract, and the contract expressly provided that "Should it become necessary * * * to make changes in excess of that herein specified, the same shall be covered by supplemental agreement." Therefore, when the Engineers directed the Contractor to proceed with the work in the letter of December 12, 1960, their authority under the contract could not exceed twenty-five per cent of the original contract. The letter from the Engineers disagreed with the claim that the excavation would exceed twenty-five per cent. The Contractor had authority to proceed to carry on the work of excavation to the limit of the authority of the Engineers to order additional work, but the Engineers had no authority to enter into a supplemental contract for the Owners. They alone could do that. Moreover, the right to charge on a cost-plus profit basis required a supplemental agreement (See GC-10, d., Note 1) because the contract expressly provided that "Should any of the changes, not requiring supplemental agreements, be made as provided herein, the Contractor shall perform the work as altered, increased, or decreased at the Contract unit price or prices." (See GC-10, a., Note 1.)
We are of the opinion, and so hold, that the Contractor was entitled to twenty-four cents per cubic yard for the material exexcavated without a supplemental agreetion of the Engineers, up to the total volume contracted to be excavated and an additional twenty-five per cent, but not for any additional material over twenty-five per cent excavated without a supplemental agreement with the Owners. Exhibit "C" attached to the declaration indicates that an additional sum of $138,808.60 was paid to the Contractor by the Owners. It is not clear whether or not this payment is for the twenty-five per cent over-run unclassified excavation, but if this sum is for the full twenty-five per cent additional excavation at twenty-four cents per cubic yard, the Contractor is not now entitled to additional pay for extra unclassified excavation. Although it is apparent that the contract required a supplemental agreement with the Owners before the Contractor could obtain pay for extra work over and above twenty-five per cent of the volume of unclassified excavation, the Contractor insists that the Owners waived this part of the contract. This contention is based upon the correspondence between the Contractor and the Engineers in which the Contractor notified the Engineers that the volume of unclassified excavation would exceed the twenty-five per cent margin mentioned in the contract. It is claimed that because the Contractors gave the Owners notice that the *600 work would exceed the volume mentioned in the contract, and because the Engineers directed the Contractor to proceed, the Owners are estopped to set up the defense that the contract required a supplemental agreement.
The Contractors cited several cases wherein it is said that there are cases "where we would not hesitate to use the beneficient doctrine of estoppel in pais against a municipality." Reliance Mfg. Co. v. Barr, 245 Miss. 86, 100, 146 So.2d 569, 574 (1962). It must be borne in mind that an estoppel in pais, as distinguished from an estoppel of record, is such as will arise from acts and declarations of the party sought to be charged who designedly induces another to alter his position injuriously to himself. Moreover, where the doctrine is sought to be applied, it is necessary that the party in whose favor it is invoked must also act in good faith. We are of the opinion that the doctrine is not applicable in the instant case, because the Contractor and the Engineers under the terms of the contract could not have agreed in writing to change the contract so as to charge the Owners without a supplemental agreement from the Owners.
The contract in the instant case requiring a supplemental agreement for extra work over minor changes is essential, because municipalities and other governmental agencies obtain funds with which to build public improvements from bond issues based upon estimates furnished to them, and municipalities must reserve the right to stop a project if they determine the extra work will exceed the amount of money allocated to any given phase of a project. Mallett v. City of Brookhaven, 217 Miss. 491, 64 So.2d 641 (1953). Furthermore, it has been generally held that no recovery can be had on an implied contract, or quasi contract, or upon quantum meruit for extra work where the claim is based upon an expressed contract. Cooney v. City of Belleville, 311 Ill. App. 553, 37 N.E.2d 361 (1941); Traub v. Buchanan County, 341 Mo. 727, 108 S.W.2d 340 (1937); Coyle v. City of Pittsburgh, 344 Pa. 426, 25 A.2d 707 (1942); Luzerne Township v. Fayette County, 330 Pa. 247, 199 A. 327 (1938); Royer v. Board of County Supervisors of Albermarle County, 176 Va. 268, 10 S.E.2d 876 (1940); Annot., 154 A.L.R. 362 (1945); 43 Am.Jur., Public Works and Contracts, §§ 94, 118 (1942); Annot., 110 A.L.R. 155 (1937); Annot., 84 A.L.R. 954 (1933).

IV
The Contractor-appellant complains that he was required to do extra work by the Engineers as set out in the claims filed with the Engineers and with the Owners. These claims were rejected by the Owners upon the ground, among others, that the Owners could not pay the claims until they were approved by the Engineers. It is admitted that none of these claims, other than the claim for extra unclassified excavation, required a supplemental written agreement. It is said, however, that "Appellant seeks recovery therefor on a basis other than contract unit prices," as was agreed upon under the contract.
It is clear to us that the Engineers had the authority under the contract. (See GC-10, a. and c., Note 1) to make changes up to twenty-five per cent "based upon the originally estimated quantities and the unit prices bid * * *." The Engineers also had authority under Paragraph GC-14 of the contract "to reject all work and materials which do (did) not conform to the contract."
The Contractor-appellant claims that the Engineers wrongfully rejected the claims because they were ordered to perform the work by the Engineers, and they were not responsible for the erosion or extra work under the terms of the contract.
We are of the opinion that the demurrer of the Owners to this part of the original declaration is not well-taken and should have been overruled for the following reasons: (1) The Contractor was not required to appeal from the Owners to the *601 circuit court, but could sue for wrongful deductions or money due under the terms of the contract, and for extra work required to be done by order of the Engineers, up to but not to exceed the twenty-five per cent margin provided for in the contract; (2) whether or not the extra work was outside the terms of the contract bid, and the claim therefor was wrongfully rejected by the Engineers are questions of fact and not of law; and (3) whether or not the Contractor was wrongfully required to do extra work and for that reason he should not have been penalized is also a question of fact and not of law. Frisby v. Grayson, 216 Miss. 753, 63 So.2d 96 (1953); 43 Am. Jur., Public Works and Contracts, §§ 114, 115 (1942).
We are of the further opinion that the Contractor can only recover (in the event he recovers) the unit price for the work done.
We are also of the opinion that in the event the Contractor is entitled to recover on the claims made, other than extra unclassified excavation, he can recover only for the "work as altered, increased, or decreased at the contract unit price or prices," as set out under GC-10, Sub-paragraph a. of the contract, unless, of course, the unit contract price is not applicable: For example, the liquidated damages charged against the Contractor. 43 Am.Jur., Public Works and Contracts, § 114, Note 11 (1942).
In summary: The demurrers filed by the Engineers, E.B. Cavallo and Associates and Michael Baker, Jr., Incorporated, were properly sustained by the trial court, and the judgment of the circuit court dismissing these defendants from the suit is hereby affirmed. We hold that the declaration stated a cause of action against the City of Jackson, Mississippi, and the Jackson Municipal Airport insofar as it enumerates items of extra work required to be performed under the contract, and money wrongfully withheld by the defendants belonging to the plaintiff, Delta Construction Company of Jackson, Mississippi. On the other hand, we hold that the plaintiff, appellant here, is not entitled to recover for unclassified excavation on a cost-plus profit basis, but can recover for such extra work up to twenty-five per cent of the quantity of excavation at the contract price of twenty-four cents per cubic yard.
It is apparent to this Court that this case should be heard in the Chancery Court, rather than the Circuit Court, because it involves accounting, and for that reason the case will be remanded to the Chancery Court of the First Judicial District of Hinds County, Mississippi, for further proceedings in compliance with this opinion.
Affirmed in part, reversed in part, and remanded to the Chancery Court of the First Judicial District of Hinds County, Mississippi.
GILLESPIE, P.J., and BRADY, PATTERSON and SMITH, JJ., concur.

APPENDIX
Note 1:
GC-10. Changes and Increased or Decreased Quantities of Work:
a. The Engineer reserves and shall have the right to make such changes, from time to time, in the plans, the character, or quantity of the Work as may be considered necessary or desirable to complete fully and acceptably the proposed construction in a satisfactory manner, provided such alterations do not change the total cost of the project, based on the originally estimated quantities and the unit prices bid, by more than twenty-five (25) percent, and provided further that such alterations do not change the total cost of any major item, *602 based on the originally estimated quantities and the unit price bid, by more than twenty-five (25) percent. (A major item shall be construed to be any item, the total cost of which is equal to or greater than ten (10) percent of the total contract price, computed on the basis of the proposal quantity and the Contract unit price.) Should it become necessary, for the best interest of the City, to make changes in excess of that herein specified, the same shall be covered by supplemental agreement.
The Contractor shall not start work on any alteration requiring a supplemental agreement until the agreement setting forth the adjusted prices shall be executed by the City and the Contractor.
Should any of the changes, not requiring supplemental agreements, be made as provided herein, the Contractor shall perform the Work as altered, increased, or decreased at the Contract unit price or prices.
In case a satisfactory adjustment in price cannot be reached for any item requiring a supplemental agreement, the City reserves the right to terminate the Contract as it applies to the items in question and make such arrangements as may be deemed necessary to complete the Work.
* * *
c. In giving instructions, the Engineer shall have authority to make minor changes in the Work, not involving extra cost, and not inconsistent with the purpose of the Work, but otherwise, except an emergency endangering life or property no extra Work or change shall be made unless in pursuance of a written order by the Engineer, and no claim for an addition to the Contract Sum shall be valid unless so ordered.
d. The value of any such extra Work change shall be determined by unit prices named in the Contract or subsequently agreed upon.
e. If the above method is not agreed upon, the Contractor, provided he receives an order as above, shall proceed with the Work. In such case, he shall keep and present in such form as the Engineer may direct, a correct account of the net cost of labor and materials, together with vouchers. In all cases, the Engineer shall certify to the amount, including reasonable allowance for overhead and profit, due to the Contractor. Pending final determination of value, payments on account of changes shall be made on the Engineer's estimate.
f. In case the Contractor deems extra compensation is due him for Work or materials not clearly covered in the Contract, or not ordered by the Engineer as an extra, the Contractor shall notify the Engineer in writing of his intention to make claim for such extra compensation before he begins the Work *603 on which he bases the claim and shall afford the Engineer every facility for keeping actual cost of the Work. Failure on the part of the Contractor to give such notification or to afford the Engineer proper facilities for keeping strict account of actual cost shall constitute a waiver of the claim for such extra compensation. The filing of such notice by the Contractor and the keeping of costs by the Engineer shall not in any way be construed to prove the validity of the claim. When the Work has been completed, the Contractor shall within ten (10) days file his claim for extra compensation with the Engineer, who will present it to the City for consideration.
* * *
GC-12. Suspension of Work: The Engineer may order the Contractor to suspend all or any part of the Work for such period of time as may be determined by him to be necessary or desirable for the City. Unless such suspension unreasonably delays the progress of the Work and causes additional expense or loss to the Contractor, no increase in Contract Price will be allowed. An equitable extension of time for the completion of Work in the event of any such suspension will be allowed the Contractor; provided, however, that the suspension was not due to the fault or negligence of the Contractor.

* * *
GC-14. Engineer's Status: The Engineer shall have authority to stop Work whenever such stoppage may be necessary to insure the proper execution of the Contract. He shall also have authority to reject all work and materials which do not conform to the Contract, to direct the application of forces to any portion of the Work, as in his judgment is required, and to decide questions which arise in the execution of the Work. The Engineer shall, within a reasonable time after their presentation to him, make decisions in writing on all claims of the Contractor and on all other matter relating to the execution and progress of the Work or the interpretation of the Contract Documents.
The Work shall be subject to inspection by the Engineer or his duly appointed inspectors to insure strict compliance with the terms of the Contract. The Contractor shall furnish the Engineer with every reasonable facility to assist the Engineer and his duly appointed inspectors in the performance of their duties. Ample time shall be afforded the Engineer to inspect, sample and test the Work as deemed necessary during the progress of construction. If the Engineer requests it, the Contractor at any time before acceptance of the Work, shall remove or uncover such portions of the finished Work as may be directed. After examination, the Contractor shall restore said portions of the Work to the standards required by the specifications. Should the Work thus exposed or examined prove acceptable, the uncovering, or removal, and the reworking of the Work back to the specified requirements will be paid for as extra work, but should the Work so exposed or examined prove unacceptable, the uncovering and reworking shall be at the Contractor's expense. Any work done or materials used without suitable *604 supervision or inspection by the Engineer or his authorized representative may be ordered removed and replaced at the Contractor's expense. The presence of an inspector on any piece of work shall not relieve the Contractor of the responsibility for the proper execution of the Work in accordance with the plans and specifications.
* * *
INSTRUCTIONS TO BIDDERS (Pages IB-1, IB-2, of the original contract.)
* * *
2. Proposal Requirements and Conditions

* * *
b. Interpretation of Estimated Quantities: An estimate of quantities of work to be done and materials to be furnished under these specifications is given in the proposal. It is the result of careful calculations and is believed to be correct, but it is given only as a basis for comparison of proposals and the award of the Contract. The city does not expressly or by implication agree that the actual quantities involved will correspond exactly therewith; nor shall the bidder plead misunderstanding or deception because of such estimate of quantities, or of the character, location, or other conditions pertaining to the work. Payment to the Contractor will be made only for the actual quantities of work performed or materials furnished in accordance with the plans and specifications and it is understood that the quantities may be increased or diminished as hereinafter provided without in any way invalidating the unit bid prices.
c. Examination of Plans, Specifications, Special Conditions, Site of Work: The bidder is required to examine carefully the site of the proposed work, the proposal, plans, specifications and contract forms. He shall satisfy himself as to the character, quality and quantities of work to be performed, materials to be furnished, and as to the requirements of these specifications and contract. The submission of a proposal shall be prima facie evidence that the bidder has made such examination.
Any information shown on the plans as to the soil or material borings or tests of existing materials is for the convenience of the Contractor. The information is not guaranteed and no claims for extra work or damages will be considered if it is found during construction that the actual soil or material conditions vary from those indicated by the borings.
Should a bidder find discrepancies in, or omissions from the Drawings or Contract Documents, or should he be in doubt as to their meaning, he should at once notify the Engineer, who may send written instructions to all bidders. The address of the Engineer is: E.B. Cavallo and Associates and Michael Baker, Jr., Inc., 3957-61 Northview Drive, P.O. Box 9997, Northside Station, Jackson 6, Mississippi.
The "Notice to Contractors", Instructions to Bidders", the "Proposal", the "General Conditions", the "Special Conditions", the "Detailed Specifications", the "Contract Drawings", and the "Construction Contract" together with any revisions and addenda issued prior to award form the Contract Documents.

*605 ON SUGGESTION OF ERROR
GILLESPIE, Presiding Justice:
Upon preliminary consideration the Court was of the opinion that the suggestion of error filed by appellant had sufficient merit to require further consideration, whereupon we called for additional briefs on two propositions.
The principal argument of concern to this Court is the contention that there was a waiver on the part of the City of Jackson and the Jackson Municipal Airport Authority of their right to rely upon the provisions of the contract relating to a supplemental agreement in case of charges involving additions of more than twenty-five percent to any major item. After carefully restudying this question, and recognizing that such provision can be waived by a governmental subdivision in an appropriate case, we are nevertheless of the opinion that the allegations of the complaint are insufficient to state a cause of action based upon such waiver. We therefore adhere to our original opinion with regard to appellant's claim for additional compensation for unclassified excavation.
Appellant contends that the dismissal of the case against the engineers, E.B. Cavallo and Associates and Michael Baker, Jr., Inc., should be without prejudice. We are of the opinion that the suggestion of error in this regard is well taken and should be sustained. In dismissing the case against the two above named contractors, the order of the trial court provided that the dismissal was with prejudice. In our original opinion we affirmed the lower court's action in sustaining the demurrer of the engineers, and we did so on the grounds: (1) That they were not parties to the contract and were therefore not liable under the contract; (2) that the suit in tort for the alleged negligence of the engineers could not be maintained under the contract since there was no privity between the engineers and the contractor; and (3) that there was a misjoinder of the tort action against the engineers with a suit on contract against the City of Jackson and the Jackson Municipal Airport Authority.
It is generally held that where the demurrer goes to the merits of the complaint, the dismissal is without reservation and with prejudice, but where the demurrer goes to some special ground, the dismissal is without prejudice. Neill v. Wells, 164 Miss. 372, 145 So. 341 (1933); Griffith, Mississippi Chancery Practice § 311 (2d ed. 1950). In the Neill case it was said that a general demurrer going to the merits should be separately exhibited from demurrers containing special grounds which go only to procedure. In the present case the demurrers of the engineers included both a general demurrer that the declaration stated no cause of action against said defendants, and special matters relating to misjoinder of causes, namely, joining in one suit actions for damages on a contract against the City of Jackson and the Jackson Municipal Airport Authority and an action in tort against the engineers, and other special matters.
As the Court said in Neill v. Wells, supra, the general rule is that when a demurrer includes general and special grounds and there is a decree sustaining the demurrer in general terms, it will be assumed that the decree was on the merits, and will be taken as res judicata on the merits. However, in Neill v. Wells, supra, the demurrers contained general and special grounds and the decree was not clear as to the grounds upon which the demurrers were sustained. The Court interpreted the decree as sustaining the demurrers on the special ground of multifariousness. In the case at bar we affirmed the order sustaining the demurrers of the engineers as not stating a cause of action, but the specific reasons for the affirmance were essentially procedural in nature. We did not consider whether the plaintiff did or could state a *606 cause of action against the engineers in a separate suit based on tort. For the same reasons stated in Neill v. Wells, supra, our interpretation of the order of the trial court sustaining the demurrers as to the engineers is that they were sustained on the special grounds of demurrer.
We are of the opinion that under the circumstances of this case the dismissal of the suit as to the engineers, E.B. Cavallo and Associates and Michael Baker, Jr., Inc., should be without prejudice.
As to E.B. Cavallo and Associates and Michael Baker, Inc., the suggestion of error is sustained to the extent that the judgment of dismissal as to said engineers shall be without prejudice. As to all other matters the suggestion of error is overruled.
Suggestion of error overruled in part and sustained in part.
RODGERS, BRADY, PATTERSON and SMITH, JJ., concur.
NOTES
[1] See Appendix.