MALLETT v. CITY OF BROOKHAVEN.

May 11, 1953

No. 38769        31 Adv. S. 19        64 So. 2d 641

*Robertson & Robertson,* for appellant.

*Jones & Stratton,* for appellee.

494

McGehee, C. J.

On the 26th day of March, 1947, the City of Brookhaven entered into a good and valid contract with the appellant, William E. Mallett, for engineering services

in connection with the proposed extension and improvement of its water and sewerage systems and the streets of the city. The contract was duly entered on the minutes of the mayor and board of aldermen, and its validity is not challenged on this appeal. The issue before us is the interpretation of the contract as prepared by the appellant and executed by the parties.

The appellant, through his own initiative, succeeded in getting the mayor and board of aldermen interested in going ahead with the planning of these badly needed projects with the thought in mind that certain loans might soon be obtained for use in defraying the cost. thereof, and that an election could be carried in favor of the issuance of $150,000.00 of revenue bonds, and $350,000.00 of general obligation bonds, for those purposes, since the city only had available for improvements of either or all of the said systems the sum of approximately $48,000.00 derived from the revenues of the waterworks system. This was fully understood by both of the contracting parties.

The contract therefore provided under subsection (f) thereof:

"It is agreed that in the event that OWNER elects to apply for an Advance Planning Loan from the Federal Government for any part or parts of the work set out herein, the ENGINEER will prepare the necessary application forms for such loan, and that ENGINEER will not proceed with the preparation of the necessary detailed plans and specifications unless and until the application for said loan has been approved; or ENGINEER has been notified by OWNER to proceed without such approval . . .

". . . It is further agreed that in event that application for Federal Assistance in financing herein proposed project is not approved by the Federal Agency so solicited; or in event that the election called to ratify the bond issue required to defray the cost of the herein proposed projects fails of ratification; or if for any other

reason the herein proposed project be abandoned by formal action of the OWNER, and the ENGINEER so advised, fee as provided in Sections 2(a) and 2(b) of this agreement shall constitute a full and complete payment to the ENGINEER.''

The subsections 2(a) and 2(b) referred to in the next preceding paragraph hereof read as follows:

''(a)  Upon the execution of this contract a fee of One Dollar as faith of its legality:

''(b)  Upon the presentation to the OWNER of the plans, estimates and specifications of each of the projects enumerated, a fee which will equal 2.7% (two and seven-tenths per cent) of the project presented;''

The appellant engineer, in stipulating in the contract the duties that he was to perform, agreed to

(a)  attend the necessary conferences with the city; Mississippi State Highway Department; Mississippi State Board of Health; Federal Works Agency, if any be inaugurated by the Congress; and any other agencies having an interest in or jurisdiction over said projects;

(b) to prepare all plans, estimates, specifications, and contract documents, necessary for the letting of construction contracts for said improvements;

(c)  to furnish adequate and competent engineering inspection of construction and materials to assure that the projects are built as planned, directed and specified.

The city on its part agreed in the contract, in addition to the obligations assumed in subsection 2(a) and 2(b) hereinbefore quoted, that it would accept and pay the engineer for his aforesaid services a fee of six per cent (6%) of the total construction costs of the projects, but, of course, this obligation did not accrue, except to the extent provided for in subsection 2(a) and 2(b) unless the projects were constructed.

This brings us to the consideration of the meaning of subsection 2(b) when construed in connection with the two paragraphs of the contract hereinbefore quoted from subsection (f) thereof.

It will be observed that the language of subsection 2(b) providing "upon the presentation to the owner (City of Brookhaven) of the plans, estimates and specifications of each of the projects enumerated, . . ." does not specify whether it has reference to preliminary plans, estimates, and specifications or what later became necessary for the letting of contracts. This ambiguity, however, in this provision of the contract prepared by the appellant engineer, is in our opinion solved by his testimony upon cross-examination at the trial.

The appellant was asked: "Q. Was it your idea that you were to be paid for these preliminary plans, preliminary surveys and estimates? A. If my idea had been that I would be paid for it, there would have been a provision in the contract to that effect." Upon further inquiry as to his interpretation of the meaning of subsection 2(b), the appellant engineer was asked: "Well, now, does that mean upon presentation of preliminary surveys and estimates? A. It does not."

The appellant's associate, Miller, when being questioned as to the nature of the plans and specifications first drawn, was asked: "This was just preliminary plans for you and the city and everybody, is that right? A. Information for us is right, for the city and for us." The other associate, Young, testified that the only final completed plans that were ever presented was on the water distribution system. The appellant was fully paid for that service the fee provided for in subsection 2(b) of the contract.

The appellant engineer was asked on cross-examination, and testified as follows:

"Q. All right. Well, now then, I'll ask you if the contract that you are relying on doesn't contain this provision: 'It is agreed that in the event that Owner elects to apply for an Advance Planning Loan from the Federal Government for any part or parts of the work set out herein, that Engineer will prepare the necessary application forms for such loan, and that Engineer will

not proceed with the preparation of the necessary detailed plans and specifications unless and until the application for said loan has been approved.' Is that in your contract?

"A. That's in the contract.

"Q. Well, now then, what you are claiming here is that you went ahead with other work in getting up your plans on the sewer proposition?

"A. I do.

"Q. In spite of the fact that your contract said you were not to go into the detailed plans until after the loan had been approved or until the City had so instructed you to do?

"A. Because I do not see, I don't see then that it's of any interest to the City if I want to expend more work than is necessary, which might save me work in the future.

"Q. You mean you were requested to prepare the detailed plans?

"A. No, we never were requested to, and we never did on the sewerage system."

As against the contention of the city that the engineer was not to "proceed with the preparation of the necessary detail plans and specifications unless and until the application for said loan has been approved; or engineer has been notified by owner to proceed without such approval," the appellant invokes the final provision of the contract, which follows the signatures of the contracting parties thereto, reading as follows:

"BE IT FURTHER RESOLVED that the said Wm. E. Mallett, Civil Engineer of Jackson, Miss., be and he is hereby authorized and directed to proceed according to the terms and conditions embodied in the above contract."

The appellant does not claim that he was directed to proceed with the preparation of the necessary detail plans and specification by any other orders subsequently

entered on the minutes of the mayor and board of alder-men, and it will be observed that the authorization to proceed last above quoted is that he is to do so "according to the terms and conditions embodied in the above contract." He was, therefore, to be governed as to the time when he should proceed by the provision of the contract that he should not do so "unless and until the application for said loan has been approved; or engineer has been notified by owner to proceed without such approval."

On April 23, 1947, the appellant, through his associates, filed applications with the Federal Works Agency for advance planning loans in the sum of $152,500.00 for extension and improvements of the sanitary sewerage system, for $185,000.00 for extension and improvements of the waterworks system, and for $150,000.00 for a sewerage treatment plant, but none of which applications were approved.

An election was held for the issuance of the $150,000.00 revenue bonds and the $350,000.00 of general obligation bonds, but the bonds were to be issued for the combined projects and the defeat of one would mean the defeat of the other. The election failed to carry because of the failure of the general obligation bond issue to receive a majority of the votes of all the qualified electors in the city.

The proof on behalf of the appellant was to the effect that everyone concerned thought that the Federal Planning Loans would be granted and that the bond issue would carry, and the chancellor evidently believed from the testimony of the appellant and his associate Young that they decided to take a chance and went ahead with their work as engineers which was not to be proceeded with unless and until the loans were approved. The preliminary plans, estimates and specifications were completed within thirty days after the contract was executed, and were for use in applying for the loans and carrying the election. No plans and detailed specifica-

tions were needed unless the loans were made and the election had carried. Mr. Young testified in regard to the preliminary plans as follows:

". . . so we limited the amount of the work done on the sewer system just to the amount that the board needed from time to time to satisfy its purpose in proceeding with the planned improvements, that is information necessary for bond elections, and, that is the major thing, the information necessary for the bond election, but in any event we limited the work done on the sewer system to such work as was necessary and even as of now we have not completed the plans, final plans, detailed plans on the sewer system."

As hereinbefore shown, the last paragraph of subsection (f) of the contract provided that if the applications for Federal assistance in financing the proposed projects "is not approved by the Federal Agency so solicited; or in the event the election called to ratify the bond issue required to defray the cost of the herein proposed projects fails of ratification; or if for any other reason the herein proposed projects be abandoned by formal action of the owner, and the engineer so advised, a fee as provided by subsections 2(a) and 2(b) of this agreement shall constitute a full and complete payment to the engineer."

The appellant's interpretation of this provision is that in either of the foregoing events, the project would have to be "abandoned by formal action of the owner, and the engineer so advised," in order to defeat his right to the 2.7% of the advance estimation of the total cost of the three remaining projects.

We are of the opinion that the chancellor was correct in holding that the requirement of formal action for abandonment and notice to the engineer is applicable only where the project is abandoned for *any other reason* than the failure of the Federal Agency to approve the applications for loans or than that the election has failed to carry. The appellant having drawn the contract, it

would appear to the Court that he was not then contemplating that he should be notified of formal abandonment if the applications for the loans were not approved or if the election did not carry, since he was going to handle the applications for the loans and intended to do, and was doing, all he could to obtain the loans and to promote the success of the bond issue in the election. He would need no notice of the unfavorable outcome of his own efforts and of those of the city in regard to these unsuccessful undertakings in which he was so vitally interested and with the progress of which he was necessarily conversant. Then too, we think that the chancellor's interpretation is justified by the language of this provision of the contract as written.

While it appears to be true that the appellant performed a great deal of engineering and miscellaneous services in connection with these projects for which he has not been paid, the fact remains that some of the services were rendered outside of the contract and some were rendered prematurely and contrary to the provision of the contract that he should not proceed with the detail plans and specifications unless and until the loans were approved. It would seem that the very purpose of this provision was to avoid the unnecessary incurrence of a large obligation for engineering services in the event the city was unable to get the funds with which to pay for the proposed construction.

After the applications for Federal loans were rejected and the election failed to carry in favor of the issuance of the bonds, the program was discontinued so far as the city administration then in power was concerned, and no contracts for construction had been let when the new administration went in office in January, 1949, other than the street project which had been completed out of the fund of approximately $48,000.00 that the city had on hand when the appellant began his negotiations for the contract, and the proof on the trial fully sustained the trial court in holding that he had

been fully paid for his services on the street project that was constructed.

The decree of the trial court in denying the relief prayed for must, therefore, be affirmed.

Affirmed.

*Hall, Lee, Holmes* and *Arrington, JJ.,* concur.