LANDRY *v.* MOODY GRISHMAN AGENCY, INC.

No. 43720 December 13, 1965 181 So. 2d 134

*Thomas J. Wiltz, Charles K. Pringle,* Biloxi, for appellant.

*Wm. Joel Blass,* Wiggins; *Herman W. Smith, Jr.,* Gulfport, for appellee.

Gillespie, J.

Moody Grishman Agency, Inc., complainant below and appellee here, is a corporation domiciled in Biloxi, Mississippi, engaged in the real estate and general insurance business. It will be referred to hereinafter as the Grishman Agency. The Grishman Agency filed a bill of complaint in chancery court against Robert Joseph Landry, its former employee, praying for enforcement by injunction of a clause in an employment contract prohibiting the employee from engaging in a competing business. Upon final hearing on the merits, the relief was granted and Robert Joseph Landry, the employee, was enjoined from engaging in the insurance business in competition with the Grishman Agency for a period of five years in the counties of Harrison, Hancock and Jackson. Landry appealed.

The essential facts are stated in the light most favorable to the Grisham Agency, in whose favor the chancellor made a general finding. The Grishman Agency and Landry entered into negotiations which resulted in a written contract of employment dated October 25, 1962, as follows:

This Contract made and entered into by and between MOODY GRISHMAN AGENCY, INC., hereinafter referred to as the Employer and ROBERT JOSEPH LANDRY, hereinafter referred to as the Employee;

WITNESSETH:

WHEREAS, the Employer is a corporation chartered under the Laws of the State of Mississippi and operates a general insurance and real estate business from its office in Biloxi, Harrison County, Mississippi, and

WHEREAS, it is the desire of the Employer to retain the services of a skilled general insurance man and the Employee has represented to the Employer that he is a well-qualified and capable insurance man, and

WHEREAS, it is the desire of both parties hereto to enter into an agreement of employment for a given period of time, looking toward a more permanent arrangement if the results of such temporary period of employment are satisfactory to both parties hereto, now, therefore,

In consideration of the premises, the sum of ONE DOLLAR ($1.00) paid by the Employer to Employee, the mutual benefits to be derived herefrom and the further considerations passing between the parties, as hereinafter set forth, it is agreed by and between the parties as follows:

I. The Employer agrees to employ and the Employee agrees to work for the Employer for a period of one (1) year commencing January 1st, 1963, and ending with the close of business on December 31st, 1963.

2. As compensation for his services to the Employer, the Employee shall receive: . . . .

A. A salary of One Hundred Dollars ($100.00) per week during the term of this Contract.

B. In addition to the salary provided in sub-paragraph A. above, the Employee shall receive one-third (1/3) of all the gross general insurance commissions in excess of Fifteen Thousand Six Hundred Dollars ($15,600) for the year commencing January 1st, 1963 and ending with the close of business on December 31st, 1963, provided the employment is not terminated sooner by one of the methods hereinafter set forth. In the event the contract is so terminated, then the Employee will be paid one-third (1/3) of all gross general insurance commissions for the period of time employed prior to date of termination in excess of the pro rata part of the above referred to Fifteen Thousand Six Hundred Dollars ($15,600.00), based on the relationship of the period of time worked to the entire calendar year. For example, if the contract is terminated after the first six months of operation,

the Employee would be entitled to one-third (1/3) of all gross general insurance premiums in excess of Seven Thousand Five Hundred Dollars ($7,500.00).

At the close of the business year on December 31st, 1963, an accounting will be had by and between the parties hereto and any sum or sums due by either party to the other party will be adjusted in cash. In the event the gross general insurance commissions exceed, in any monthly period, three (3) times the salary provided in subparagraph A. above, for such period, the Employer and the Employee may consider a drawing or drawings by the Employee against the amount provided in this sub-paragraph B, provided, however, the amount or amounts to be drawn are satisfactory to and approved by the Employer.

3. In determining the gross general insurance commissions for the calendar year 1963 as a basis for payment to Employee under the terms of this contract, all gross general insurance commissions received by the Employer during the said year shall be considered. This shall be true even though such collections are for insurance sold prior to January 1st, 1963. However, premiums for insurance sold during the calendar year 1963 but not collected on or prior to December 31st, 1963, shall be excluded from such figure. Any cancellations or losses during the calendar year 1963 shall be charged against the gross general insurance commissions as used in this paragraph.

4. The Employee understands that it is necessary for him to have an automobile and to use same in his position of employment. All expense of operation, including repairs, supplies, oils, lubricants and other expense connected therewith, together with personal liability insurance in an amount satisfactory to both parties, and for the protection of both parties, with the exception of the first Twenty Five Dollars ($25.00)

each month thereof, shall be borne by the Employee. The Employer will reimburse the Employee for the first Twenty-Five Dollars ($25.00) of such expenses each month.

5. The Employee shall give full time to the duties of his position and shall not accept employment of any kind during such period from any other person or persons.

6. All business submitted by the Employee must be acceptable to the Employer. It is understood that the Employer maintains a highstanding with the companies which it represents and that the right to select the risks submitted, whether such risks be of a nature involving the credit of the person who applies for insurance, the character of such applicant for insurance, the value of the property involved, the type of risk involved, or for any other similar reason, is retained by the Employer. However, the Employer will give careful consideration to any risk submitted by the Employee. The Employer reserves the right to fix the general policies to be followed in the operation of the insurance business and the Employee agrees to conform therewith. The Employee understands that in the conduction of the general insurance business, he must necessarily handle collections and other items connected with any related to the insurance field.

7. Employee will be entitled to hospitalization insurance and other similar benefits furnished to other employees by the Employer.

8. This contract may be terminated by mutual agreement of the parties hereto. It may be terminated by either party by giving written notice to the other party of the failure of such party to comply with the terms and conditions of this contract. Such written notice must be given thirty (30) days prior to the effective date thereof. This contract will be terminated by the

death of the Employee, should such death occur during the calendar year 1963. In the event the contract is terminated, an accounting shall be had up to and including the date of termination and any sum or sums due by one party to the other will be adjusted in cash. In the event this contract is terminated prior to December 31st, 1963, or in the event it is completely fulfilled but the parties hereto do not enter into a contract for further employment then, in either of such events, the Employee agrees as a part of the consideration hereof not to compete with the employer in Harrison, Jackson or Hancock Counties, Mississippi, within a period of five (5) years from the date of termination of the contract, for whatever cause the same may be terminated. This agreement not to compete applies equally to the Employee acting in his own capacity or serving as an agent or Employee of another.

Landry worked pursuant to this contract the entire year 1963, and it is agreed that the contract was fulfilled by the parties for its full term. On December 24, 1963, Moody Grishman, President of the Grishman Agency, and Landry had a discussion concerning Landry's employment for the coming year 1964. They reviewed the business done in 1963 and as a result of this conversation Grishman told Landry that the contract would be renewed for another year in order to give him another opportunity to bring production up to expectations. Landry told Grishman that he needed an additional amount as salary and Grishman offered to increase Landry's weekly salary from $100 to $125 and to pay his civic club dues. Landry told Grishman that he wanted time to think it over and to talk to his wife and agreed to let Moody Grishman know by December 30, 1963, whether the terms were agreeable. The various clauses of the 1963 contract other than weekly salary and civic club dues were not discussed. On December 30, 1963, Landry failed to let Grishman know whether

the terms of the contract were agreeable and about that time Moody Grishman went to the hospital where he remained several weeks. After January 1, 1964, Landry continued as the employee of the Grishman Agency, performing duties as he had in 1963, until September 1, 1964. For each month from January to September of that year the Grishman Agency accepted the services of Landry and paid him the new salary schedule of $125 per week, plus $25 a month automobile expense, and his civic club dues.

In April 1964, Landry asked Moody Grishman if he was going to draw up a contract. Grishman replied that the Grishman Agency had offered him a contract in December 1963 and Landry had never made known whether the new contract terms were agreeable. Landry stated that he was not aware that he had not accepted the December 1963 offer and again asked Moody Grishman if they were going to enter into a new contract. Grishman then told Landry that he did not feel disposed to do so because Landry's production did not give the Grishman Agency sufficient incentive to go into a new contract and that he, Moody Grishman, had no intention of going into a new contract at that time. Apparently it was Grishman's intention that he would continue to see if Landry would increase his production so as to make a new contract attractive to the Grishman Agency. On September 1, 1964, Landry resigned. His stated reason for doing so was that he did not have any security without a written contract. Thereafter this lawsuit was filed.

The determinative question in this case is whether the Grishman Agency and Landry entered a "contract for further employment" following the termination of the written contract on December 31, 1963. It is the contention of appellee, Grishman Agency, that since Landry failed to accept the offer made by Grishman on December 24, 1963, and no written contract was entered

for employment after that date, that there was no contract for employment during the months of January through September 1964. Moody Grishman testified that he continued the employment arrangement "in contemplation" of a contract being entered into but none was ever consummated. Landry contends that the continuation of the relationship of employer and employee after January 1, 1964, for a period of eight months under a new pay schedule on a month to month basis constituted a "contract for further employment" within the meaning of the contract clause. Landry contends that the clause providing for post-employment restraints never came into play under the terms of the contract. The bill of complaint filed by the Grishman Agency stated that after completion of the first year of employment provided for in the written contract the parties did not thereafter contract further but that "the defendant continued on a month to month basis without contract until on or about the first day of September 1964."

Since the written contract was not terminated prior to December 1, 1963, the post employment restraint clause would not become operative if the parties entered into "a contract for further employment."

 █ The written contract for the year 1963 terminated at the close of business on December 31, 1963. It is not contended that the written contract was renewed or extended. The services rendered by Landry after December 31, 1963, were necessarily done so pursuant to a contract, express or implied. The essential agreement or contract for employment of Landry beginning January 1, 1964, was that he would draw a salary of $125 per week, be paid $25 per month automobile expenses, and that the Grishman Agency would pay Landry's civic club dues. This was in accord with the offer made by Moody Grishman on behalf of the Grishman Agency, and while Landry did not verbally accept this offer, he performed the services expected

of him and was paid in accordance with the offer. This was "a contract for further employment" following the fulfillment of the written contract for the year 1963. It was not written and was for no specific period of time, but it was a contract nevertheless. It was performed by both parties for a period of eight months. The relationship of employer and employee existed between the Grishman Agency and Landry for the eight months' period and ██ █ this relationship does not exist absent a contract, express or implied. No reasoning process or citation of authority is necessary to support the conclusion that a contractual relationship existed between the Grishman Agency and Landry from January 1st until September 1, 1964. We are not concerned with the formalities required to validate an executory contract.

██ █ Clauses in employment contracts providing for post employment restraints on the employees are in restraint of trade and individual freedom and are not favored by the law. ██ █ But they are valid if not unreasonable, and when reasonable the courts will not hesitate to hold parties to their contract. Frierson v. Sheppard Building & Supply Co., 247 Miss. 157, 154 So. 2d 151 (1963). As we said in the Frierson case, it is the contract itself and the necessity that contracts be honored that invokes the power of the court. We must look to the contract to determine if the clause prohibiting Landry from competing with his former employer became operative upon the termination of the relationship of employer and employee on September 1, 1964. This contract is plain and unambiguous. The restrictive clause became operative only if (1) the contract was terminated before December 1, 1963, or (2) if the parties did not enter into a contract for further employment (after December 1, 1963). Neither of the contingencies occurred. It could be argued with considerable force that the Grishman Agency probably

thought the restrictive clause would become operative in any event unless a new *written* contract was made "for further employment." The Court will look to the contract for its meaning, not what a party thereto may have thought it meant. The standard is objective, measured by the language of the contract, not by the subjective intent or belief of a party which conflicts with meaning ascertained by the objective standard.

A leading case very similar to the one before us is Jenkins v. King, 65 N.E. 2d 121 (Ind. 1946), Annotation 163 A.L.R. 397 (1946). It involved a written contract between an insurance agency and an employee for a two year period which contained a post employment restraint clause. The written contract was fully performed and the employee continued to work for nearly two years after termination of the two year period without any new written contract. The Court held in substance that the continuation of the employment under the same terms provided in the written contract was a new contract. See Annot., 163 A.L.R. 405-407 (1946).

 In sum, Landry was not prohibited from competing with the Grishman Agency under the terms of the contract and the undisputed facts. A restrictive clause in a contract is not favored by the law and the Court will not exercise power which the contract itself does not invoke.

 Appellee contends that there was no valid "contract for further employment" for the reason that whatever contract, if any, existed after January 1, 1964, was oral and involved an agreement for acquisition of stock in the Grishman Agency over a period of five years, and was void under the statute of frauds, Mississippi Code Annotated section 264 (1956). This contention is without merit. In the first place, Moody Grishman, on behalf of the Grishman Agency, denied that any oral agreement concerning the acquisition of stock was made at the December 24, 1963, meeting. The Grishman Agen-

cy is hardly in a position to rely upon the terms of a contract that it denies existed. ■■■ Secondly, the statute of frauds has no application to a contract executed by performance by both parties. 49 Am. Jur. *Statute of Frauds* § 550 at page 853 (1943).

The decree is reversed and judgment entered here dissolving the injunction and dismissing the bill of complaint.

Reversed and judgment here for appellant.

*Lee, C. J., and Jones, Inzer and Smith, JJ.,* concur.