243 So.2d 67 (1971)
CITIZENS NATIONAL BANK OF MERIDIAN, Defendant/Appellant,
v.
L.L. GLASCOCK, INC., Complainant/Appellee.
No. 46004.
Supreme Court of Mississippi.
January 4, 1971.
Rehearing Denied February 1, 1971.
Wilbourn, Williams & Glover, Meridian, for defendant-appellant.
Floyd, Cameron, Deen & Prichard, Ralph E. Young, Jr., Meridian, for complainant-appellee.
PATTERSON, Justice:
This is an appeal by the Citizens National Bank of Meridian from a decree of the *68 Chancery Court of Lauderdale County which awarded L.L. Glascock, Inc., the sum of $8,902.21. The judgment was entered against the bank on a quantum meruit basis for the performance of extra work in connection with a building contract between the parties. Since interest, overhead, and profit were not included in the judgment, L.L. Glascock, Inc., has filed a cross appeal contending that the lower court erred in not permitting recovery on these items.
In 1964 the appellant, hereinafter owner, and appellee, hereinafter contractor, entered into a written contract for the demolition and removal of the owner's existing bank building in the city of Meridian and for the construction of a new bank building upon the same site. Subsequent to the removal of the old building the contractor, in testing the site for placing of concrete piling for the foundation of the new building, encountered the existing foundations of the old building. These foundations were about five feet below the surface of the basement level of the old building. Although the presence of these old foundations was anticipated, their precise location and size were unknown to the parties until disclosed by testing operations. Their location obstructed the placing of the new piling, necessitating that they either be bored through or removed.
Thereafter, the contractor contacted the structural engineer, an employee of the architect, and asked if some of the old foundations could be used as foundation for the new structure. Upon being advised that this was not feasible, the contractor removed the foundations which entailed much labor and expense, but which was nevertheless less expensive than boring through the existing foundations. A conflict of evidence arose between the engineer and the contractor as to whether the removal was directed by the engineer. The engineer testified that he advised the contractor that it would be necessary for him to remove only that portion of the existing foundation as would give room for the new piling. The testimony of the contractor's witnesses was that he directed that the old foundations be completely removed.
During the time the removal of the foundations was under way the contractor advised the owner's architect that he considered this labor to be supplementary to the contract for which payment in excess of the contract price would be expected. Accordingly when the work was completed in May 1965, the architect was presented a bill for this work.
The architect testified that he never directed the removal of the old foundations and that he was unaware the contractor expected additional pay for the labor performed until shortly before the bill was presented. Subsequently, they discussed the matter on several occasions. It is apparent that the architect initially thought the contractor was entitled to be paid over the contract price for the work performed. He informed the contractor that he would aid him in obtaining this payment. However, upon reexamining the contract, he concluded that the work was not extra and was within the contract price. He, therefore, declined to certify to the owner that the contractor was due reimbursement for extra work.
After a lengthy hearing in which all of the contract documents were introduced, the chancellor found the owner liable on a quantum meruit basis for the removal of the old foundations which he found to be extra work not anticipated by the contract. He further found "that the owner personally through its board of directors never officially passed on this subject and certainly never signed anything or gave any oral statement to the effect that they agreed that this was an extra. There is evidence that the architect agreed that this was an extra, but changed his mind, and there is no doubt in the Court's mind but that from the beginning of the work the contractor felt that this was an extra." *69 He also found that the owner had not waived any provisions of the contract.
The relevant portions of the contract are:
2-F CONCRETE PILING
(a) Scope: Furnish labor and materials to complete bored, cast in place concrete pilings as indicated, specified herein or both.
* * * * * *
(4) Equipment: Use drilling equipment generally used in standard pile boring practice, as approved.
(5) If obstructions such as maconry (sic) old foundations, etc., are encountered, bore thru as directed.
(6) Payment:
a. Except as herein provided, no separate payment will be made for specified work; include all costs in connection therewith in Stipulated Sum for entire work under contract. (Emphasis added.)
* * * * * *
Attached to the contract and made a part thereof is a pamphlet prepared by the American Institute of Architects entitled "General Conditions." Article 15 thereof is as follows:
CHANGES IN THE WORK
The Owner, without invalidating the Contract, may order extra work or make changes by altering, adding to or deducting from the work, the Contract Sum being adjusted accordingly. All such work shall be executed under the conditions of the original Contract except that any claim for extension of time caused thereby shall be adjusted at the time of ordering such change.
In giving instructions, the Architect shall have authority to make minor changes in the work, not involving extra cost, and not inconsistent with the purposes of the building, but otherwise, except in an emergency endangering life or property, no extra work or change shall be made unless in pursuance of a written order from the Owner, signed or countersigned by the Architect, or a written order from the Architect stating that the Owner has authorized the extra work or charge, and no claim for an addition to the Contract Sum shall be valid unless so ordered.

* * * * * *
Should conditions encountered below the surface of the ground be at variance with the conditions indicated by the Drawings and Specifications the Contract Sum shall be equitably adjusted upon claim by either party made within a reasonable time after the first observance of the conditions. (Emphasis added.)
Article 16 of the bulletin relating to claims for extra cost states:

If the Contractor claims that any instructions by drawings or otherwise involve extra cost under the Contract, he shall give the Architect written notice thereof within a reasonable time after the receipt of such instructions, and in any event before proceeding to execute the work, except in emergency endangering life or property, and the procedure shall then be as provided for changes in the work. No such claim shall be valid unless so made. (Emphasis added.)
The architect's status and authority are related in Article 38 which is set forth in part below:
ARCHITECT'S STATUS; ARCHITECT'S SUPERVISION
The Architect shall be the Owner's representative during the construction period. * * * He shall have authority to act on behalf of the Owner only to the extent expressly provided in the Contract Documents or otherwise in writing, which shall be shown to the Contractor. * * * (Emphasis added.)
*70 The contractor's primary contention is that he was entitled to additional pay for supplemental work not within the terms of the contract since it is customary within the trade for a contractor to comply with the request of the owner's representative, who in this instance was the structural engineer, an employee of the owner's architect. The owner maintains that the very purpose of the contract was to assure it the building desired at the contract price of $679,560. No argument is advanced by either of the parties that they were unfamiliar with the terms of the contract.
The chancellor based his opinion upon a quantum meruit basis stating, "* * * that since the architect is chosen by the owner who places him in complete charge of representing the owner as to the construction that the owner should be held responsible, and not the contractor, for the actions of the architect which causes the contractor to do extra work."
We are of the opinion that the written contract expresses the agreement of the parties and that it prevails over custom. Courts do not have the power to make contracts where none exist, nor to modify, add to, or subtract from the terms of one in existence. Kalavros v. Deposit Guaranty Bank & Trust Co., 248 Miss. 107, 158 So.2d 740 (1963), and Phenix Insurance Co. v. Dorsey, 102 Miss. 81, 58 So. 778 (1912).
With the above premise in mind and the contract before us, there remains the question of whether the terms of the contract between the parties permit an award on a quantum basis. We note initially that such an award, if proper, would require a finding by the court that the labor was not anticipated by the contract, and also that there were no provisions of the contract by which payment could be made for unanticipated labor. In the recent case of Delta Construction Company of Jackson v. City of Jackson, 198 So.2d 592, 600 (Miss. 1967), though relating to a public contract, nevertheless, expresses a principle of law we think equally applicable to private contracts. We there stated:
The contract in the instant case requiring a supplemental agreement for extra work over minor changes is essential, because municipalities and other governmental agencies obtain funds with which to build public improvements from bond issues based upon estimates furnished to them, and municipalities must reserve the right to stop a project if they determine the extra work will exceed the amount of money allocated to any given phase of a project. Mallett v. City of Brookhaven, 217 Miss. 491, 64 So.2d 641 (1953). Furthermore, it has been generally held that no recovery can be had on an implied contract, or quasi contract, or upon quantum meruit for extra work where the claim is based upon an expressed contract. * * *
The old foundations were anticipated since Section 2-F of the contract refers to them with provision for method of procedure upon their being encountered and with the further provision that no separate payment would be made for this labor. Article 15 sets forth the method of payment for extra work, notable of which is that, "no extra work or change shall be made unless in pursuance of a written order from the owner," and Article 16 provides that in any event no claim for extra work shall be valid unless the contractor gives the architect written notice of his claim "before proceeding to execute the work. * * *" Finally, Article 38 limits the architect's authority on behalf of the owner to the express terms of the contract or otherwise in writing.
We can only conclude in comparing these plain terms to the vague assumption of the contractor that custom of the trade would implement the written document in his behalf, that the former prevails. The written contract anticipated every contingency upon which this suit was based. Its very purpose was to forestall imposition of vague claims derivative of custom within *71 the trade with which laymen are often unfamiliar. The owner, being desirous of limiting its financial obligation, should not have its pocketbook exposed to the custom of architects and contractors unless it agrees thereto. In this instance the owner agreed to pay for extra work only if it was authorized in writing prior to its execution. Having contracted directly upon the point, there was no leeway for an award on a quantum meruit basis.
Reversed and rendered.
GILLESPIE, P.J., and INZER, SMITH, and ROBERTSON, JJ., concur.