**LITTON SYSTEMS, INC., d/b/a Ingalls Shipbuilding Division, Plaintiff,**

v.

**FRIGITEMP CORPORATION and Lawson F. Bernstein, Trustee in Bankruptcy of Frigitemp Corp., Frigitemp Corporation, Lawson F. Bernstein, Trustee in Bankruptcy of Frigitemp Corporation, Gerald Lee, and Marvyn Silver, Defendants.**

Civ. A. No. S77–0372(B).

United States District Court, S.D. Mississippi, S.D.

July 3, 1985.

Karl Wiesenberg, Pascagoula, Miss., Thomas L. Patten, Latham, Watkins & Hills, Washington, D.C., William J. Powers, Pascagoula, Miss., D. Michael Fitzhugh, McKenna, Conner & Cuneo, Washington, D.C., L.E. Allison, Jr., Edmund L. Brunini, Brunini, Grantham, Grower & Hewes, Jackson, Miss., for plaintiffs.

William R. Grimes, Garrity, Connolly, Lewis, Lowry & Grimes, New York City, George S. Shaddock, Pascagoula, Miss., J. Leray McNamara, Jackson, Miss., Richard F. Scruggs, Pascagoula, Miss., W. Scott Welch, III, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., Norman M. Monhait, Irving Morris, Morris & Rosenthal, Wilmington, Del., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This matter is before the Court on the Motion of the Plaintiff, Litton Systems, Inc., d/b/a Ingalls Shipbuilding Division ("Litton"), for partial summary judgment on the eighth, ninth and tenth counts of the Defendant Trustee's counterclaim (quantum meruit and unjust enrichment/third-party beneficiary claims). The Court, having considered the briefs, affidavits and materials submitted in support of, and in opposition to the Motion, is of the opinion, for the reasons set out hereinafter, that the Motion should be granted.

## FACTUAL HISTORY

In May, 1969, Litton entered into Contract No. N00024–69–C–0283 for the construction of certain Landing Helicopter Assault (LHA) vessels to be delivered to the United States Navy. In 1970, Litton entered into contract No. N00024–70–C–0275 for the construction of thirty destroyer (DD) vessels to be delivered to the United States Navy. Litton subcontracted to Fri-

gitemp a substantial portion of essential construction work on the LHA and DD vessels, three of which subcontracts are at issue in this proceeding.

On or about June 20, 1972, Litton placed Purchase Order No. 21–01–A00505–01 with Frigitemp for the purchase and installation of hull insulation on an LHA at a fixed price of $5,100,000.00. The LHA hull insulation subcontract, dated June 20, 1972, provided that Frigitemp would complete its work by April 17, 1976. On or about April 16, 1973, Litton placed purchase order No. 69–01514–011 with Frigitemp for LHA joiner work at a fixed price of $10,985,250.00. The LHA joiner subcontract, dated April 16, 1973, provided that Frigitemp would complete its work by December 17, 1976. On or about April 16, 1973, Litton placed purchase order No. 70–01501–001 with Frigitemp for DD joiner work and hull insulation at a fixed price of $52,800,000.00. The DD subcontract, dated April 16, 1973, provided that Frigitemp would complete its work by April 3, 1978.

Although the parties disagree vehemently over the causes of the delays, it is agreed that the work on the LHA contracts as a whole was some six years beyond the original delivery schedule and the work on the destroyers was some two years beyond the original delivery schedule by 1978. On May 28, 1979, Litton terminated the Frigitemp subcontracts for default due to insolvency pursuant to paragraph 7b(3) of the LHA terms and conditions and paragraph 7b(3) of the DD standard terms and conditions contained in the subcontracts. During the course of the contracts, Litton and Frigitemp entered into 442 Change Notices which modified the contracts with regard to work, time of performance and payment. As a result of these change orders, the face value of the three contracts had risen from the original face amount of approximately $69,000,000.00 to a face value of approximately $112,000,000.00. During the course of the contracts, Litton and Frigitemp entered into a series of three Agreements from 1976 through 1978 by which the contracts were converted into a cost-plus contracts, in which Litton agreed to pay Frigi-

temp its allowable costs of performance, subject to recoupment by Litton, above the $112,000,000.00 face value of the contracts. Pursuant to these agreements, Litton paid Frigitemp approximately $161,000,000.00 prior to termination.

Litton contends in this action that, through the fraud and breaches of contract of Frigitemp and its officers, Litton overpaid Frigitemp by approximately $50,000,-000.00. Frigitemp asserts that the value of the work it performed under the contracts exceeded the amount it was paid by Litton by approximately $38,000,000.00.

## FRIGITEMP'S COUNTERCLAIM

Frigitemp's claims against Litton are set out in a ten count counterclaim. Although only the last three counts are of immediate concern in the instant motion, the relief sought in many of the remaining counts is germane to the issues involved in this Motion. The first seven counts are based upon breach of contract. Count one seeks damages for failure to follow the modular design program, improper scheduling, incomplete releases, and inadequate support services. Count two is based upon a refusal to equitably adjust the contract terms pursuant to the "changes" clauses of the contracts. Count three alleges breach of a November 1976 agreement to pay Frigitemp's costs after November 15, 1976. Count four deals with the breach of an alleged $11,000,000.00 settlement agreement but has been voluntarily dropped by the Trustee. Count five alleges breach of a March 30, 1977 agreement to pay Frigitemp's costs. Count six alleges breach of a March 16, 1978 agreement to pay Frigitemp's costs. Count seven alleges that Litton breached the contracts by wrongfully terminating Frigitemp on May 28, 1979.

The three counts at issue in the instant Motion are counts eight, nine and ten. Count eight seeks recovery in quantum meruit for Litton's wrongful termination of the contracts after substantial completion by Frigitemp. Count nine seeks quantum meruit recovery for delays and disruptions

causing Frigitemp's performance to exceed the original scope of the contracts. Count ten seeks recovery on an unjust enrichment or third party beneficiary theory for sums Litton allegedly received based upon Frigitemp's claims in a settlement agreement entered into with the Navy in June of 1978.

## DISCUSSION

The instant Motion seeks dismissal of the counts alleging entitlement to extra-contractual relief based on quantum meruit (counts eight and nine) and unjust enrichment or third-party beneficiary relief (count ten).

### 1. STANDARD OF REVIEW

F.R.Civ.P. 56(c) provides that summary judgment should be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." A district court should not resolve contested material facts, but where there are no material facts in genuine dispute and the movant is entitled to judgment as a matter of law, summary judgment should be granted. *See, e.g., Simler v. Conner,* 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963); *United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Fountain v. Filson,* 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949). In *Bloomgarden v. Coyer,* 479 F.2d 201 (D.C.Cir.1973), the court noted, "where, as here, the essential facts are not in dispute the question whether a quasi-contract should be erected is one of law, and as such is a proper subject for summary disposition." *Id.* at 211 (citations omitted). Since each of the subject contracts provide that they are to be governed according to the law of the state of Mississippi the Court is of the opinion that whether Frigitemp is entitled to avoid the contracts and seek recovery under the theory of quantum meruit is a question of law to be determined according to law of the state of Mississippi.

### 2. CONTRACTUAL PROVISIONS

Each of the subject contracts contained a "changes" clause (paragraph 5 in the LHA contracts and paragraph 6 in the DD contract) which provided in pertinent part as follows:

> [Litton] shall have the right at any time to make changes in the drawings, designs, specifications, quantities, delivery schedules, methods of shipment or packaging, place of inspection, acceptance and point of delivery, and any other provision of this order and [Frigitemp] shall immediately proceed with the performance of this order as changed. If any such change causes an increase or decrease in the cost of, or the time required for the performance of any part of the work under this order, whether changed or not changed by any such order, an equitable adjustment shall be made in the price or delivery schedule, or both, and the order shall be modified in writing accordingly.

Each contract also contained a clause entitled "Delays in Performance—Default Termination—Late Delivery" (Paragraph 7 in each of the contracts) which provided in pertinent part as follows:

> (b) [Litton] may, by written order, terminate this Order in whole or in part for [Frigitemp's] default if [Frigitemp]
>
>> 1) fails to make delivery of the supplies, part lists or data requirements, or perform the services within the delivery schedule specified in this Order or any extension thereof, or ...
>>
>> 3) becomes insolvent or fails to provide additional assurance of financial solvency when it reasonably appears that [Frigitemp] is or will not be financially solvent and additional assurances are requested by [Litton].
>
> (c) In the event of termination for [Frigitemp's] default under Paragraph (b) ...
>
>> 1) if [Frigitemp's] default is not the result of an excusable delay [Frigitemp] shall receive payments in accordance with Paragraph (e) ...
>>
>> 3) [I]f it is determined that [Frigitemp] was not in default under the provisions of this Order, [Frigitemp] shall receive payments in the same manner as if the

Order had been terminated in accordance with the Optional Termination and Suspension article of this Order.

Paragraph (e) provides that payment for completed supplies will be at the contract price, while payment for manufactured materials will be at a price to be agreed upon.

The Optional Termination and Suspension clause granted Litton the right to terminate Frigitemp at any time and granted Frigitemp the right to receive its allowable costs in accordance with ASPR (now DAR) 8–706.

Each contract contained a "Shipyard Interface Clause" which provided in pertinent part:

The schedule for [Frigitemp's] work assignments shall be at the sole discretion and authorization of [Litton's shipyard superintendent]. And it shall be [Frigitemp's] responsibility to adhere to [Litton's] schedule and/or assignments.

Notwithstanding the clause of the Order entitled, "Changes" [Litton] may at any time, at no increase in the price of the Order, delay or suspend indefinitely [Frigitemp's] assignment and simultaneously and/or subsequently redirect or reassign work effort as necessary.

Each of the contracts contained a "Delivery, Shipment and Invoices" clause which provided in pertinent part as follows:

2. Notwithstanding the clause of the Order entitled, "Change" [Litton] may, at any time, at no increase in the price of the Order, direct [Frigitemp] in writing to deliver and complete the installation of Contract Products at [Litton's] Shipyard on a date or dates later than those set forth in this Order and this Order shall be modified in writing to reflect such change in delivery schedule. Upon completion of material and installation of the Contract Products, [Litton] shall pay [Frigitemp] in compliance with the Special Provision entitled "Payments" or "Deferred Delivery and Payments" whichever is applicable to this Order.

Although Frigitemp now contends that it was working outside the scope of the con-tracts, throughout the course of performance Frigitemp's Project Manager signed progress payment affidavits stating that he was "thoroughly familiar with ... the provisions of the contract," that no employee of Frigitemp had worked on "any part of the contract products in violation of the provisions of said contract" and that "all other conditions of said Contract are being observed by [Frigitemp] in prosecution of said Contract."

Finally, each contract contained an "Entirety of Agreement" clause stating that the written document embodied the parties' entire understanding and "may not be altered, amended or modified except in writing signed by a duly authorized representative of both parties."

### 3. COUNT NINE—CHANGES, DELAYS AND DISRUPTION

#### A. *Changes.*

In an affidavit submitted by Frigitemp in opposition to Litton's Motion for Summary Judgment, Frigitemp's shipbuilding expert, C. Leonard Willis stated that the changes involved in the Litton-Frigitemp contract were so massive that no one could have anticipated them at the time of contracting. Numerous documents submitted by Frigitemp in its opposition to the Motion for Summary Judgment substantiate the claim that large scale changes were made to the contract work during the course of construction. In *Massachusetts Bonding & Ins. Co. v. John R. Thompson Co.*, 88 F.2d 825, 829 (8th Cir.); *cert. denied*, 301 U.S. 707, 57 S.Ct. 941, 81 L.Ed. 1361 (1937) the eighth circuit noted:

It is well settled law that, even though a construction contract provides that alterations may be made during the progress of the work, radical or revolutionary changes—changes not fairly within the contemplation of the parties at the time the contract was made—changes constituting a material departure from the original undertaking—do not come within [the terms of the contract].

Frigitemp cites numerous cases, primarily from the Court of Claims in which the

"cardinal change" doctrine is applied to allow the contractor to sue for increased damages due to extraordinary changes in the scope of the original contract work. None of the cited cases are Mississippi ·decisions or apply Mississippi law.

■ Mississippi law clearly and unequivocally denies extra-contractual relief where the parties have expressly contracted upon a subject. In *Citizens National Bank v. Glascock*, 243 So.2d 67 (Miss. 1971), the contractor sued an owner claiming he was entitled to additional pay for supplemental work beyond the terms of the original contract. The lower court held that the contractor was entitled to additional pay because the extra work had been authorized by the owner's architect and that it was customary for a contractor to comply with directions from the owner's representative. The Mississippi Supreme Court reversed and remanded, holding that the "written contract expresses the agreement of the parties and ... prevails over custom." *Id.* at 70. In examining the contractor's claim to quantum meruit relief, the court noted that two elements are necessary to permit an award based on quantum meruit:

> i) "a finding that ... the labor was not anticipated by the contract" and
>
> ii) "that there were no provisions of the contract by which payment could be made for unanticipated labor."

*Id.* Finding that the contact contained specific clauses governing the allowance of extra work, the court held that quantum meruit was not appropriate. "[T]he written contract anticipated every contingency upon which this suit was based.... Having contracted directly upon the point, there was no leeway for an award on a quantum meruit basis." *Id.* at 70–71. *Glascock* relied in part on *Delta Construction Company v. City of Jackson*, 198 So.2d 592 (Miss.1967). In *Delta* the contract contained a changes clause providing that the scope of the work could be increased up to 25% beyond the original quantities at the contract unit price. The excavation involved in the project was more than 25% above the original quantity. The contractor sought recovery under quantum meruit for the work which exceeded 25% above the original contract quantity. The Mississippi Supreme Court rejected the contractor's claim that he was entitled to "a fair and reasonable price and profit for the extra work." *Id.* at 595. Holding that the terms of the contract expressly precluded recovery for work exceeding 25% over the original contract amount, the court noted, "furthermore, it has been generally held that no recovery can be had on an implied contract, or *quasi* contract, or upon *quantum meruit* for extra work where the claim is based upon an expressed contract." *Id.* at 600. In *Redd v. L & A Contracting Co.*, 246 Miss. 548, 151 So.2d 205 (1963), the Mississippi Supreme Court, in denying a contractor's attempt to recover under quantum meruit, quoted with approval the language of the Supreme Court of Illinois in *Walker v. Brown and Hollingsworth*, 28 Ill. 378 (1862):

> As in physics, two solid bodies cannot occupy the same space at the same time. So in law and common sense, there cannot be an express and an implied contract for the same thing, existing at the same time. This is an axiomatic truth. It is only when parties do not expressly agree, that the law interposes and raises a promise.

151 So.2d at 208. The *Redd* court concluded that "where there is a contract, parties may not abandon same and resort to quantum meruit." *Id.* at 208, quoting *Carter v. Collins*, 151 Miss. 1, 117 So. 336, 339 (1928). In *McPherson v. Gullett Gin Co.*, 134 Miss. 771, 100 So. 16 (1924), the Mississippi Supreme Court stated:

> In case of a private contract ... where the duties and liabilities of the parties are both stipulated in the contract, there is no implied or other duty owed by either party, but all of these duties and liabilities are contained, measured and governed by the contract.

*Id.* 100 So. at 18.

The controlling decision on the applicability of the cardinal change doctrine under

Mississippi law is the Fifth Circuit decision in *Jackson v. Sam Finley*, 366 F.2d 148 (5th Cir.1966). In *Sam Finley* a city contracted to have certain road repair work done. The contractor, Sam Finley, Inc., entered into a subcontract with a subcontractor, Jackson, to "hotplane" certain streets. Although the difficulty and cost of "hotplaning" different streets covered by the contract varied, the contract took an average cost and established this as the unit price on a per square yard basis for all of the streets to be repaired. The contract contained a "Changes" clause that allowed the quantity of work to be varied without invalidating the unit price. After the subcontractor had performed the more difficult sections of work, in which he lost money, the city cancelled the contract. The subcontractor argued that the "Changes" clause:

> must not be read literally but must be held to be circumscribed by the intentions of the parties at the time of contracting. Thus, it is asserted, the parties intended that the omission clause authorize only changes which would not completely alter the contemplated scope of the work.

*Id.* at 155. The district court, and the Fifth Circuit on appeal, rejected this argument, holding that the contractual language was unambiguous and parol evidence would not be admissible to prove the "real" intentions of the parties. The Fifth Circuit noted:

> Mississippi case law makes clear that a "meeting of the minds" is not required for a valid contractual provision, and that if the contractual language unambiguously indicates an agreement, the fact that this may not correspond to the actual understanding of the parties will not justify the admission of parol evidence to modify the language. *Landry v. Moody Grishman Agency, Inc.* [1965], [254 Miss. 363] 181 So.2d 134.

*Id.* at 155. In analyzing the decisions cited by the subcontractor supporting a quantum meruit recovery, some of which are relied upon in this Motion by Frigitemp, the Fifth Circuit noted,

> We do not consider these authorities controlling here. Mississippi contract law requires that where contractual language is unambiguous, the contract read literally must be enforced. The contractual right of the city to make extensive changes in the hot planing project was in no way ambiguous. Many of the cases cited for the appellant's proposition have contained provisions which expressly limited or restricted the City's authority to make such changes. [citations omitted]. Where, on the other hand, the contractual right to make omissions is unambiguous and unrestricted, there is authority for reading the language literally, ...

> In light of the unambiguous language used in the contract, ... and the objective emphasis of Mississippi contract law, we agree with the trial court's conclusion that the contractual language was unambiguous and contained a legally binding agreement between the parties.

*Id.* In *Sam Finley*, the Fifth Circuit, applying Mississippi law, specifically considered the cardinal change doctrine and the cases from jurisdictions which embrace this doctrine, including some cited by Frigitemp herein, and rejected application of the cardinal change doctrine.

Frigitemp next argues that Litton's present position in this Motion is contrary to that which it took in prior litigation with the Navy. In prior litigation with the Navy, Litton argued that the massive changes in the contract caused by the Navy constituted a breach of contract. Frigitemp argues that Litton's prior position is inconsistent with that which it advocates in the instant Motion. To the contrary, the former controversy between the Litton and Navy was governed by federal procurement law, which recognizes the cardinal change doctrine, while the instant Motion is governed by Mississippi law which does not. Furthermore, the relief sought by Litton in the prior litigation was breach of contract rather than quantum meruit. The positions are not, therefore, contradictory.

■ Finally, Frigitemp argues that the parties attributed particular significance to the "Changes" clause and construed it to allow only normal minor changes to the contract work. Frigitemp attaches the affidavit of Thomas F. Ryan, President of the

Frigitemp Marine Division during the relevant time period. Ryan states in his affidavit that he only anticipated "ordinary, routine and foreseeable" changes in the contract terms. Regardless of the unexpressed intention of the parties at the time of contracting, Mississippi law provides that the written contract prevails over "custom." *Citizens National v. Glascock*, 243 So.2d 67, 70 (Miss.1971). In *Landry v. Moody Grishman Agency, Inc.*, 254 Miss. 363, 181 So.2d 134, 139 (1965), the Mississippi Supreme Court held that in interpreting contracts in Mississippi, "[t]he standard is objective, measured by the language of the contract, not by the subjective intent or belief of a party which conflicts with meaning ascertained by the objective standard."

It is clear, therefore, that Mississippi does not subscribe to the cardinal change doctrine, and that even if such was the law in Mississippi, the relief to be accorded would be damages for breach of contract and not the extra-contractual relief of quantum meruit.

### B. *Delays and Disruptions.*

Frigitemp argues separately that Litton interfered with Frigitemp's ability to perform its work, and that these delays and disruptions amounted to a breach of contract, entitling Frigitemp to sue for quantum meruit relief. Frigitemp points to several "admissions" of Frigitemp consisting of a March 25, 1976 letter from Litton to Frigitemp and a March 30, 1977 agreement between the parties and numerous internal memoranda in which Litton officials are critical of their own scheduling efforts. Frigitemp argues that these delays and disruptions entitle them to quantum meruit relief. *See, e.g., Citizens National Bank of Orlando v. Vitt*, 367 F.2d 541 (5th Cir. 1966), *after remand, United States v. Stringfellow*, 414 F.2d 696 (5th Cir.1969).

■ Whether or not the "changes" clause covers increases in contract time caused by delays and disruptions, it is clear that such delays and disruptions are covered in the "shipyard interface" clause. This clause allows Litton "at any time, at no increase in the price of the order [to] delay or suspend indefinitely [Frigitemp's] as-signment and simultaneously or subsequently reassign work effort as necessary." Litton concedes that *extensive* delays and disruptions might entitle Frigitemp to an equitable adjustment pursuant to change order. Even if the delays and disruptions were so extraordinary as to constitute a breach of the contracts (on a theory similar to the cardinal change theory) the remedy would be for breach of contract and not on quantum meruit.

■ Therefore, although the extent of the changes in the work, and the delays and disruptions involved therein are highly contested factual issues, resolution of these issues is not necessary in determining this Motion. It is clear that under Mississippi law, Frigitemp is bound by the contractual terms dealing with changes, delays and disruptions, and is not entitled to ignore the contract and sue on quantum meruit.

### 4. COUNT EIGHT—TERMINATION AFTER SUBSTANTIAL COMPLETION

Frigitemp argues that Litton wrongfully terminated it on May 28, 1979, and that having substantially completed the contracts at the time of termination Frigitemp is entitled to quantum meruit relief. *See, e.g., Standard Millwork & Supply Co. v. Mississippi Steel & Iron Co.*, 205 Miss. 96, 38 So.2d 448, 450 (1949), in which the Mississippi Supreme Court stated:

American courts generally hold that substantial performance of such contracts will support a recovery either on the contract or on a quantum meruit basis.

*Accord, Bevis Constr. Co. v. Kittrell*, 243 Miss. 549, 139 So.2d 375, 378 (1962); *Jackson v. Caffey*, 223 Miss. 368, 78 So.2d 361, 362 (1955); *Hardin v. Beaman*, 49 So.2d 732, 733 (Miss.1951). Frigitemp argues that paragraph 7 of the LHA contracts merely gives Litton a remedy under the contract and not Frigitemp, and that paragraph 7 of the DD contract, while it gives a remedy to both Litton and Frigitemp, does not expressly say that this is the *exclusive* remedy for wrongful termination.

■ Litton responds by arguing that termination was expressly provided for in the

contracts, and that the contracts provide certain remedies, whether the termination is subsequently determined to be rightful or wrongful. Therefore, Litton argues that the termination could not itself constitute a breach of contract, since the contracts provide for both eventualities. The contract clauses clearly provide for both a proper termination and a wrongful termination. The parties contracted on these provisions and are bound by the terms of the contract. Since the contracts provide for termination, the exclusive remedy for a wrongful termination is under the contract, and not on quantum meruit.

### 5. COUNT TEN—UNJUST ENRICHMENT AND THIRD–PARTY BENEFICIARY

On March 30, 1977, Litton and Frigitemp entered into an Agreement in which Litton promised to submit Frigitemp's claims to the Navy. In 1978, Litton and the Navy entered into a settlement agreement in which the Navy promised to pay Litton any sums ultimately determined to be due Frigitemp in subsequent court action or arbitration between Litton and Frigitemp. Frigitemp argues that on two grounds, Litton is holding sums pursuant to this settlement which rightfully belong to Frigitemp.

#### A. *Unjust Enrichment.*

In *Magnolia Federal Savings & Loan Association v. Randal Craft Realty Co.,* 342 So.2d 1308 (Miss.1977), the Mississippi Supreme Court stated:

a quasi or constructive contract rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.... It is an obligation created by law, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money under circumstances that in equity and good conscience he ought not to retain and which in justice and fairness belongs to another.

*Id.* at 1311–12.

It is clear that Frigitemp's entitlement to quasi-contractual relief must arise by vir-

tue of some relationship between Litton and Frigitemp. The relationship between Litton and Frigitemp is defined and governed exclusively by the terms of the three subject contracts. If Frigitemp is not entitled to recovery against Litton under the contracts, then it is not entitled to any funds obtained from the Navy-Litton settlement. If Frigitemp is entitled to recovery against Litton under the contracts, then Frigitemp's vehicle for relief is the counts of the counterclaim pertaining to breach of contract. There is no need or justification for looking beyond the terms of the subject contracts in awarding Frigitemp such relief as it might be entitled to.

#### B. *Third Party Beneficiary.*

█ In *Yazoo & M.V.R. Co. v. Sideboard,* 161 Miss. 4, 133 So. 669 (1931) the Mississippi Supreme Court established a three part test to determine if a party is a third-party beneficiary of a contract:

(1) When the terms of the contact are expressly broad enough to include the third party either by name [or] as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promissee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

*Id.* 133 So. at 671. *Accord Burns v. Washington Savings,* 251 Miss. 789, 171 So.2d 322, 325 (1965). The court need not reach the question of whether the promissor (Navy) intended Frigitemp to benefit from its promise of payment to the promissee (Litton). The underlying premise on which the third-party beneficiary doctrine is based is the same as that of unjust enrichment. It must appear that one party is holding sums of money which *rightfully belong* to another party. Until Frigitemp can establish its entitlement to the money under the contracts between it and Litton, it is not entitled to invoke the third-party

beneficiary doctrine. Since Frigitemp's entitlement to the money under the contracts can and will be resolved in the counts pertaining to breach of contract, there is no need to go beyond the terms of the contract to award Frigitemp a recovery based upon the extra-contractual relief of third party beneficiary.

### CONCLUSION

The Court is of the opinion that Frigitemp is not entitled to the extra-contractual remedy of quantum meruit under count eight for an alleged wrongful termination after substantial completion of the contracts, or under count nine for alleged "cardinal" changes, delays and disruptions. The Court is further of the opinion that Frigitemp is not entitled to relief based upon the Litton-Navy settlement agreement under the theories of unjust enrichment or third-party beneficiary set out in count ten of the counterclaim.

Accordingly, the Motion for Partial Summary Judgment of Litton is hereby granted as to counts eight, nine and ten, and these counts are hereby dismissed from this action.