**HENRY ELLIOT, LTD./WEST INDIES CORPORATION,**
**Plaintiff**

**v.**

**BACARDI CORPORATION and ALEX AIXALA,**
**Defendants**

Civil No. 77-185

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 26, 1980

JOHN A. ZEBEDEE, ESQ., St. Thomas, V.I., *for plaintiff*

FREDERICK G. WATTS, ESQ. (LOUD, WATTS & MURNAN), St. Thomas, V.I., *for defendant Bacardi*

CHRISTIAN, *Chief Judge*

## MEMORANDUM AND ORDER

On December 17, 1979, this Court heard testimony on whether defendant Bacardi Corporation's refusal since December 1977 to sell its rum products to plaintiff Henry Elliot, Ltd., was justified. The hearing followed the Court's October 19, 1979, Memorandum and Order which held that paragraph 4 of the Stipulation of Dismissal With Prejudice entered by the parties on August 12, 1977, signified that Bacardi had an obligation to sell its products to Henry Elliot unless it had a good faith basis for declining such sales.[1] The court

---

[1] 4. The prices for Bacardi products referred to in paragraph 2 extends only to the products sold and shipped pursuant to this stipulation. Bacardi has agreed to sell at its sole option its products on a nonexclusive basis to Henry Elliot, Ltd., in the future. The prices and the terms of payment for said sales will be those established from time to time at the sole discretion of Bacardi except as otherwise provided in this agreement. Except as provided in paragraph 2 of this agreement, it is agreed between the parties that Bacardi may at any time refuse to sell to Henry Elliot, Ltd., if in the sole discretion of Bacardi, Henry Elliot, Ltd., does not comply with the terms and conditions established by Bacardi.

finds that Bacardi lacked a good faith basis for its unwillingness to sell until December 1979. Accordingly, Henry Elliot will be entitled to damages for any losses it incurred due to Bacardi's intransigence between December 1977 and December 1979. However, since the Court also finds that by December 1979, Bacardi had acquired a good faith basis for refusing sales, from that point onward Bacardi's obligation to make sales to Henry Elliot was permanently terminated.

 We begin by clarifying the nature of Bacardi's good faith obligation. The Court's October 19, 1979, Memorandum concentrated on the RESTATEMENT (SECOND) OF CONTRACTS § 231 (Tent. Drafts Nos. 1–7, 1973):

> Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

This concept can be refined since Comment a to § 231 points out that " 'in the case of a merchant', Uniform Commercial Code § 2–103(1)(b)[2] provides that good faith means 'honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade'." There is no question that both parties qualify as merchants within the liquor wholesaling industry; each "deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction . . ." Accordingly, the criteria for evaluating Bacardi's good faith are partly objective since it must comport with "reasonable commercial standards." See Martin Marietta Corp. v. New Jersey Nat'l Bank, 25 UCC Rptr. 1458, 1460 (D.N.J. Jan. 29, 1979). Inasmuch as the Court finds that Bacardi's actions did not comply with reasonable commercial standards, the question of honesty in fact will not be addressed.

 The next preliminary issue is the question of which party has the burden of proving Bacardi's compliance or noncompliance with reasonable commercial standards. Since in order to prevail, Henry Elliot must prove Bacardi violated its good faith obligation, the Court finds that Henry Elliot has the ultimate burden of persuasion. See R. Anderson, 1 UNIFORM COMMERCIAL CODE § 1—201: 63 at 105 (1970); Ard Dr. Pepper Bottling Co. v. Dr. Pepper Co., 202 F.2d 372, 376 (5th Cir. 1953); see also 11A V.I.C. §

---

[2] 11A V.I.C. § 2—103(1)(b).

1—208.[3] The Court acknowledges, however, that Bacardi has far more extensive access to the evidence relevant to its own good faith. Thus, once Henry Elliot comes forward as it has and establishes that Bacardi is selling to all other distributors except Henry Elliot, the burden of production then shifts to Bacardi to show that its actions were commercially reasonable. It is this burden that Bacardi has failed to fulfill for neither of the two rationales proposed by Bacardi could qualify as a commercially reasonable basis for its decision prior to December 1979.

The primary rationale relied upon Bacardi to establish its good faith in refusing to sell is its knowledge of the June 6, 1977, Agreement between Puerto Rico Distillers and Henry Elliot. Bacardi interprets the Agreement as providing Henry Elliot with an exclusive distributorship of Ron Rico Rum in the Virgin Islands and concludes, therefore, that it had a good faith basis for cutting off sales. Bacardi's analysis is correct as far as it goes; however, since Bacardi did not obtain concrete knowledge of the Ron Rico agreement until December 1979, it is only at that time that Bacardi gained a commercially reasonable basis for terminating sales.

Certainly, Bacardi's knowledge of the Puerto Rico Distillers agreement would justify terminating sales to Henry Elliot. Firstly, although the ultimate legal significance of the agreement is subject to debate, an interpretation of the agreement and the follow-up correspondence (exhibits B, C, & D) to signify that the distributorship was exclusive would be commercially reasonable. Secondly, Bacardi's awareness of the agreement and, therefore, of the probability of Henry Elliot's exclusive distributorship of Ron Rico Rum, would constitute a commercially reasonable basis for a decision to discontinue sales. The conclusion that the decision to discontinue sales is commercially reasonable is compelled by the testimony of Mr. O'Hara, the president of Bacardi at the time of the decision. Mr. O'Hara, the individual responsible for the decision, believed Ron Rico to be Bacardi's major competitor in the Virgin Islands. (Transcript at 39, hereinafter T. 39.) O'Hara reasoned that the area is a tourist market and, therefore, a

---

[3] § 1—208. Option to Accelerate at Will.

> A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised.

prime target of the intensive advertising strategies common to Bacardi and Ron Rico alone among rum products in the Virgin Islands. (T. 50.) Thus, O'Hara could reasonably conclude that it would be inappropriate to continue selling to a distributor who had an exclusive distributorship agreement with Bacardi's major competitor in the market.

However, it also follows that Bacardi lacked a commercially reasonable basis for its actions until it obtained knowledge of the exclusive arrangement. Firstly, Bacardi and Henry Elliot had had a smooth and successful business relationship continuously for the prior twenty years. (T. 63.) In fact, for almost twenty years, Bacardi's sales to Henry Elliot had risen practically every year. (T. 62.) Secondly, examination of paragraph 12 of the 1969 agreement between the parties (exhibit 2) along with supplementary correspondence (exhibits 3 and 4) indicates that Bacardi was well aware that Henry Elliot or its subsidiaries were purchasing Ron Rico Rum, albeit not on an exclusive distributorship basis. Finally, it is clear that Bacardi never actively investigated Henry Elliot or any of its fellow distributors to learn of their alternative suppliers (T. 86), and, therefore, it follows that Bacardi was not particularly concerned with this issue, absent clear evidence of an exclusive distributorship. Thus, the determination question as to Bacardi's and, therefore, Mr. O'Hara's good faith is framed by the famous query of Senator Howard Baker at the Senate Judiciary Committee's Watergate Hearings "What did he (Mr. O'Hara) know and when did he know it?"

Mr. O'Hara's testimony is of little assistance to the Court in determining the extent of his knowledge of the Ron Rico agreement at the time he decided to discontinue sales to Henry Elliot in December 1977. One document he allegedly relied on was a letter dated January 5, 1978, from Puerto Rico Distillers to A. H. Riise declining to sell Ron Rico rum because Henry Elliot was the exclusive distributor. Yet O'Hara could not possibly have seen the letter until weeks after his decision. Moreover, O'Hara never could say whether he saw the letter within weeks, months or years of his decision. (T. 52.) In addition, Mr. O'Hara apparently never saw the Ron Rico agreement or the follow-up correspondence (exhibits B, C, & D) until the discovery process shortly before the December 19, 1979, hearing. Accordingly, it is solely upon "rumors" in the industry that O'Hara determined that Henry Elliot was the exclusive distributor of Ron Rico rum. (T. 49.) In fact, O'Hara never received written memoranda on the question nor did he attempt to verify it with Henry Elliot. Thus, Bacardi is contending that it is commercially reasonable to discontinue all

sales to Henry Elliot, a distributor to whom it had increasing sales and few complaints for over twenty years, on the basis of vague rumors in the industry. This proposition is unacceptable. Furthermore, due to Mr. O'Hara's strange inability to even approximate when he obtained concrete information on the Ron Rico deal, the Court must conclude that he was unaware until the discovery process conducted shortly before the December 19, 1979, hearing.

■ The only alternative basis provided by Mr. O'Hara for his decision is that he heard that Mr. Kimmelman, the head of Henry Elliot, had been "bad-mouthing" Bacardi rum. (T. 85, 91.) Once again, however, Mr. O'Hara is a little vague as to dates. He states that he heard "reports" to this effect in December 1977. (T. 50.) In addition, O'Hara testified that he verified the reports by having a private investigator check out the manner in which Henry Elliot was displaying Bacardi products. But the investigator's report was dated January 5, 1978 (T. 51), so it is unclear whether O'Hara even had the opportunity to review it prior to making his decision. Moreover, it would have been extremely helpful to have put the report of the private investigator into evidence, but Bacardi did not do so. Furthermore, the entire bad-mouthing issue sounds a bit stretched since it is highly unlikely that Kimmelman would be bad-mouthing a product that he was simultaneously attempting to sell in large volume.

Finally, O'Hara pointed, to an incident in which Kimmelman allegedly attempted to have Albert Paiewonsky of A. H. Riise Liquors switch a large sale to the aircraft carrier S.S. Eisenhower from Bacardi rum to Ron Rico rum. Here again, although Mr. Paiewonsky took the stand, Bacardi did not elicit any testimony to substantiate O'Hara's story. Also, O'Hara was again unable to approximate the date he acquired knowledge of this event. Furthermore, it is extremely probable that the event occurred, if at all, after the decision to terminate sales to Henry Elliot and, therefore, it has slight significance. In effect, once sales of Bacardi were cut off to Henry Elliot, it would be expected that Kimmelman would pursue deals utilizing Ron Rico. Thus, it would be unfair to supply Bacardi with a good faith basis for its conduct by looking to actions taken by Henry Elliot in response to Bacardi's improper discontinuance of sales.

It is for the foregoing reasons the Court finds that Bacardi did not have a commercially reasonable basis to terminate its sales to Henry Elliot until December 1979. It follows that Henry Elliot is entitled

to recover for any damages it incurred between December 1977, the date of wrongful termination, and December 1979, the date upon which Bacardi had a commercially reasonable basis to discontinue for eternity its sales to Henry Elliot. A hearing will be held limited solely to the question of damages.

## ORDER

The premises considered and the Court being fully advised

IT IS ORDERED AND DECLARED that Bacardi has no current or future legal obligation to sell its rum products to Henry Elliot, Ltd., pursuant to the August 12, 1977, Stipulation of Dismissal With Prejudice entered on August 12, 1977;

IT IS FURTHER ORDERED that Henry Elliot is entitled to damages for its inability to purchase Bacardi products from December 1977 until December 1979; and

IT IS FURTHER ORDERED that the trial limited solely to the matter of damages suffered by Henry Elliot, Ltd., during the period December 1977 to December 1979, be, and the same is hereby, scheduled to commence on April 14, 1980, at 9:00 a.m.